214 P.3d 1024

**ADVANCED CARDIAC SPECIALISTS, CHARTERED, an Arizona professional corporation; Robert M. Siegel, M.D. and Barbara Barker-Siegel, M.D., husband and wife; and Ashok Garg, M.D. and Shipra Garg, M.D., husband and wife, Plaintiffs/Appellants,**

**v.**

**TRI-CITY CARDIOLOGY CONSULTANTS, P.C., an Arizona professional corporation; Andrew J. Kaplan, M.D., F.A.C.C. and Jane Doe Kaplan, husband and wife, Defendants/Appellees.**

**No. 1 CA-CV 08-0186.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 25, 2009.

Law Office of Marc Kalish By Marc Kalish, Phoenix, Co-Counsel for Plaintiffs/Appellants.

Amanda D. Crutchfield, Attorney at Law By Amanda D. Crutchfield, Apache Junction, Co-Counsel for Plaintiffs/Appellants.

Paul G. Ulrich, P.C. By Paul G. Ulrich, Phoenix, Co-Counsel for Plaintiffs/Appellants.

Jones, Skelton & Hochuli, P.L.C. By William R. Jones, Jr., Eileen Dennis GilBride, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

SWANN, Judge.

¶ 1 The primary defendant in this action is a physician who reported plaintiffs' alleged medical malfeasance to the Arizona Medical Board ("AMB") pursuant to A.R.S. § 32-1451(A) (Supp.2008).[1] Alleging that defendant's report was false, plaintiffs sued for defamation. Although we hold that A.R.S. § 32-1451(A) abrogates common law absolute immunity for such reports, we nonetheless conclude that the qualified immunity conferred by the statute is fatal to plaintiffs' claims and affirm the trial court's grant of summary judgment in favor of defendant.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Advanced Cardiac Specialists, Chartered ("ACS"), Robert M. Siegel, M.D. ("Dr. Siegel"), Barbara Barker-Siegel, M.D., Ashok Garg, M.D. ("Dr. Garg"), and Shirpa Garg, M.D. (collectively "plaintiffs") appeal from the superior court's dismissal on summary judgment of all counts of their complaint against Tri-City Cardiology Consultants, P.C. ("Tri-City") and Andrew J. Kaplan, M.D., F.A.C.C. ("Dr. Kaplan") (collectively "defendants"). Plaintiffs sued defendants on theories of (1) defamation per se, on behalf of Dr. Siegel and Dr. Garg against Dr. Kaplan and Tri-City ("Count One"); (2) false light invasion of privacy, on behalf of Dr. Siegel and Dr. Garg against Dr. Kaplan and Tri-City ("Count Two"); (3) wrongful institution and maintenance of an administrative proceeding, on behalf of Dr. Garg against Dr. Kaplan and Tri-City ("Count Three"); (4) intentional interference with prospective contractual or business relationship or expectancy, on behalf of ACS against Tri-City ("Count Four"); and (5) injurious falsehood, on behalf of ACS against Dr. Kaplan and Tri-City ("Count Five").[2]

¶ 3 Plaintiffs brought their action in response to a complaint letter sent by Dr. Kaplan on February 11, 2005, to the AMB regarding plaintiffs.[3] In his letter, Dr. Kaplan reported the following:

- Dr. Siegel purchased several pacemakers on eBay at a significant discount below market rate and brought the devices into the lab without adequate documentation as to their origin and the safety of the units.
- Dr. Garg inserted a stolen pacemaker into a patient without the presence of a representative of the pacemaker manufacturer and failed to replace the pacemaker lead at the time of the generator re placement, thereby endangering the patient.
- Drs. Siegel and Garg endangered the patient and perhaps others by using stolen merchandise in an unauthorized and inappropriate manner.
- Drs. Siegel and Garg are a blight upon the medical profession.

After sending the letter, Dr. Kaplan had a March 1, 2005 telephone conversation (recorded and subsequently transcribed) with an AMB investigator regarding the letter's contents. During the course of that conversation, the investigator told Dr. Kaplan that he would be considered the "complainant" in the matter under investigation.

1. We cite the current version of the statute because no revisions material to this opinion have occurred since the relevant period.

2. Count Four against Tri-City was the only count not dismissed.

3. Dr. Kaplan heard from a representative of a pacemaker company that the eBay purchases had occurred. The parties dispute the extent of the efforts that Dr. Kaplan undertook to verify that information.

¶ 4 Dr. Kaplan moved for summary judgment, arguing that under A.R.S. § 32–1451(A) he could not be sued for matters reported in good faith to the AMB and that his complaint to the AMB was absolutely privileged under the common law. Tri–City moved for summary judgment arguing that no basis existed on which to hold Tri–City vicariously liable for Dr. Kaplan's actions because Dr. Kaplan was not acting within the scope of his employment when he submitted his complaint to the AMB.

¶ 5 The court granted Dr. Kaplan's motion.[4] The court reasoned that "the statements made by Dr. Kaplan in his letter to the [AMB] are privileged both by the absolute common law privilege for reports involving professional misconduct in quasi-judicial proceedings and the qualified privilege set forth in A.R.S. § 32–1451(A)." Plaintiffs timely appealed from the judgment, which contained Rule 54(b) language. We have jurisdiction pursuant to A.R.S. § 12–2101(B), (E) (2003).

## DISCUSSION

¶ 6 We resolve questions of law involving statutory construction *de novo,* affirming the trial court's ruling if it is correct for any reason apparent in the record. *Forszt v. Rodriguez,* 212 Ariz. 263, 265, ¶ 9, 130 P.3d 538, 540 (App.2006). The existence and scope of a privilege are questions of law for the court that we review *de novo.* *Green Acres Trust v. London,* 141 Ariz. 609, 616, 688 P.2d 617, 624 (1984); *Burns v. Davis,* 196 Ariz. 155, 158, ¶ 4, 993 P.2d 1119, 1122 (App. 1999).

### I. A.R.S. § 32–1451(A) Abrogated Common Law Absolute Immunity[5]

¶ 7 We begin our discussion with an examination of the history of A.R.S. § 32–1451(A). At common law, there is an absolute privilege for reports involving professional misconduct in quasi-judicial proceedings. *See e.g., Drummond v. Stahl,* 127 Ariz. 122, 125, 618 P.2d 616, 619 (App.1980) ("Parties to judicial proceedings are generally granted an absolute privilege to use defamatory language in pleadings because of an 'overriding public interest' that persons should speak freely and fearlessly in litigation."); *Green Acres Trust,* 141 Ariz. at 612–613, 688 P.2d at 620–621 (finding absolute privilege for participants in judicial proceedings to be "in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation").

¶ 8 In 1971, the Legislature amended A.R.S. § 32–1451(A) to abrogate the common law absolute privilege in the context of reports involving medical malfeasance. The 1971 statute provided: "Any person required to report under this section who provides such information *in good faith* shall not be subject to suit for civil damages as a result thereof." 1971 Ariz. Sess. Laws, ch. 107, § 2 (1st Reg.Sess.) (emphasis added). Those who were required to report included "[a]ny doctor of medicine, or the Arizona medical association, inc. [sic], or any component county society thereof." *Id.* In 1976, the Legislature again amended A.R.S. § 32–1451(A). The language from the earlier version of the statute that restricted qualified immunity to those "required to report under this section" was stricken from the statute, effectively applying a uniform measure of qualified immunity to all persons who submitted reports. 1976 Ariz. Sess. Laws, ch. 1, § 9 (1st Spec. Sess.).

¶ 9 A.R.S. § 32–1451(A) was most recently amended in 1995.[6] Before the 1995 amendment, the statute contained the following language: "Any *doctor, health care institution, association, provider or other person who* reports or provides information to the board

4. Though the court denied Tri–City's motion because of the existence of factual issues, it correctly noted that Tri–City and Mrs. Kaplan were entitled to summary judgment because their liability was "vicarious only."

5. "... [I]n the context of defamation actions, the term absolute privilege is interchangeable with the term absolute immunity." *Ashton–Blair v. Merrill,* 187 Ariz. 315, 317 n. 2, 928 P.2d 1244, 1246 n. 2 (App.1996) (citation omitted).

6. In 1999, the Legislature amended A.R.S. § 32–1451(A) in a different respect, but that amendment has no effect on our analysis. 1999 Ariz. Sess. Laws, ch. 218, § 12 (1st Reg.Sess.).

in good faith shall not be subject to an action for civil damages as a result thereof." 1995 Ariz. Sess. Laws, ch. 212, § 13 (1st Reg. Sess.) (emphasis added). In 1995, the Legislature removed the language "doctor, health care institution, association, provider or other person" from the statute and replaced it with the phrase "any person or entity." 1995 Ariz. Sess. Laws, ch. 212, § 13 (1st Reg. Sess.). The amended statute provides in part:

> *Any person may,* and a doctor of medicine, the Arizona medical association, inc. [sic], a component county society of that association and any health care institution *shall,* report to the board any information that appears to show that a doctor of medicine is or may be medically incompetent, is or may be guilty of unprofessional conduct or is or may be mentally or physically unable safely to engage in the practice of medicine.... *Any person or entity that reports or provides information to the board in good faith is not subject to an action for civil damages* .... It is an act of unprofessional conduct for any doctor of medicine to fail to report as required by this section.

*Id.* (emphasis added).

¶ 10 Defendants argue that when the Legislature removed the language specifically enumerating those who were protected by qualified immunity and replaced it with the phrase "any person," it did so with the intent to restore the common law absolute privilege to those who were required to report and retain a qualified privilege for those who were merely permissive reporters. We disagree.

¶ 11 We are unpersuaded by defendants' argument that the phrase "any person" should be construed to refer only to those who are not required to report. The phrase "any person" cannot be reduced to any clearer expression. It means just what it says—"any person." The Legislature's use of the term "entity" appears to be a more general expression of the formerly enumerated class "health care institution, association, [or] provider." Logically, the term "any person" was meant as a more general replacement for the remaining terms, "doctor ... or other person." *Id.* Therefore, we conclude that the language of A.R.S. § 32–1451(A) means that the common-law absolute privilege has been fully abrogated in favor of a qualified privilege for those acting "in good faith."

## II. Dr. Kaplan Is Entitled to Qualified Immunity

¶ 12 Having concluded as a matter of law that the statute extends qualified immunity to the statements at issue, we must next determine whether plaintiffs provided sufficient evidence to generate a triable issue of fact on the question whether the privilege was abused. *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624. In this inquiry, we view the facts in the light most favorable to the party against whom summary judgment was entered. *Emmett McLoughlin Realty, Inc. v. Pima County,* 212 Ariz. 351, 353, ¶ 2, 132 P.3d 290, 292 (App.2006).

¶ 13 To avoid summary judgment pursuant to the qualified privilege that protects such reports, plaintiffs must produce clear and convincing evidence that Dr. Kaplan abused his privilege. *See Moe v. Wise,* 97 Wash.App. 950, 989 P.2d 1148, 1157 (1999); *see also Kass v. Great Coastal Express, Inc.,* 152 N.J. 353, 704 A.2d 1293, 1294 (1998) ("[A]n abuse of qualified privilege must be proven by clear and convincing evidence."). "[T]he plaintiff may ... prove an abuse of that privilege either by proving publication with 'actual malice' or by demonstrating excessive publication." [7] *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624 (quoting *Selby v. Savard,* 134 Ariz. 222, 225, 655 P.2d 342, 345 (1982); *see Hirsch v. Cooper,* 153 Ariz. 454, 458, 737 P.2d 1092, 1096

7. Contrary to representations made during oral argument by counsel for the plaintiffs, we find no authority to suggest that Dr. Kaplan's letter of complaint is automatically published on the AMB website. The record does not reveal any other means by which the plaintiffs could substantiate the wide-spread dissemination of the letter needed to establish abuse of the privilege through excessive publication or even the colorable existence of a false light claim. *See* Restatement (Second) of Torts, § 652D, cmt. A (1977) ("Publicity" requires communication of the information at issue to the public at large).

(App.1986) ("A conditional privilege is abused and forfeited when a defendant acts with malice in fact."), *disapproved on other grounds by Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989).

¶ 14 "An abuse through 'actual malice' occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth." *Id.* (quoting *Selby,* 134 Ariz. at 225, 655 P.2d at 345). Plaintiffs contend that Dr. Kaplan's efforts to verify the truthfulness of his statements were insufficient to establish good faith. This contention fails for two reasons. First, the burden was on plaintiffs to establish that Dr. Kaplan *abused* his privilege, not on Dr. Kaplan to demonstrate good faith. Second, Plaintiffs' focus on whether Dr. Kaplan made sufficient independent efforts to test the veracity of statements made by those who reported information to him is misplaced. As the United States Supreme Court candidly acknowledged in *St. Amant v. Thompson,* 390 U.S. 727, 731–32, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), of the constitutional actual malice standard "It may be said that such a test puts a premium on ignorance [and] encourages the irresponsible publisher not to inquire ...." Though the qualified privilege at issue in this case is rooted not in the First Amendment but in state law, the same standard governs both privileges. Therefore, absent evidence that Dr. Kaplan actually entertained serious doubt about the truth of his statement, he did not abuse the privilege as a matter of law.

¶ 15 Plaintiffs' argument is premised on the notion that Dr. Kaplan was required to use reasonable care to investigate the substance of his statements before making them to the AMB—a simple negligence standard. Negligence is the appropriate standard when there has not been "any allegation that the plaintiff is a public figure, or that the matter is one of public concern, *or that a privilege applies.*" *Dube v. Likins,* 216 Ariz. 406, 420, ¶ 51, 167 P.3d 93, 107 (App.2007) (emphasis added) (citing *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977)). Negligence is not the appropriate standard here.

¶ 16 Against the more stringent standard articulated in *Green Acres Trust,* we conclude that plaintiffs have not provided clear and convincing evidence that Dr. Kaplan abused the qualified privilege. None of the evidence supplied by the Plaintiffs demonstrates that Dr. Kaplan entertained doubts as to the truth of his publication, or that he knew of its probable falsity. *Green Acres Trust,* 141 Ariz. at 616, 688 P.2d at 624.

### III. The Trial Court Did Not Err In Denying Plaintiffs' Request for Rule 56(f) Relief.

¶ 17 Plaintiffs also argue that the trial court erred when it granted Dr. Kaplan's Motion for Summary Judgment without affording plaintiffs additional time to depose a witness, Mr. Caforio. According to plaintiffs, Mr. Caforio's deposition testimony was necessary because they "believed [his] testimony would further contradict Dr. Kaplan's testimony regarding his supposed investigation before sending the Letter."

¶ 18 Such testimony would only become material if the plaintiffs could establish that as a consequence of Dr. Kaplan's communications with Mr. Caforio, Dr. Kaplan questioned the truthfulness of the statements. Plaintiffs have not contended—either on appeal or in the trial court—that any aspect of Dr. Kaplan's investigation led him to doubt the veracity of the statements. Though it is conceivable that Mr. Caforio could have pointed to additional steps Dr. Kaplan could have taken to investigate the truth of the statements, such evidence would not have demonstrated that he abused the privilege. Therefore, any additional time the court may have granted plaintiffs to depose Mr. Caforio would not have produced evidence that would raise a "genuine issue as to any *material* fact." Ariz. R. Civ. P. 56(c) (emphasis added).

## CONCLUSION

¶ 19 For the foregoing reasons, we conclude that Dr. Kaplan's complaint to the AMB was protected by only a qualified immunity pursuant to A.R.S. § 32–1451(A). Because plaintiffs failed to present sufficient evidence to raise an issue of material fact as

to whether Dr. Kaplan abused the privilege, we affirm the trial court's grant of summary judgment.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICK IRVINE, Judge.