232 P.3d 1281

**Anthony YEUNG, M.D.,**
**Plaintiff/Appellant,**

v.

**Zoran MARIC, M.D. and Debra Maric, husband and wife, Defendants/Appellees.**

**No. 1 CA–CV 08–0653.**

Court of Appeals of Arizona,
Division 1, Department D.

June 8, 2010.

500

⚷36

The Cohen Law Firm By Larry J. Cohen, Phoenix, Attorneys for Plaintiff/Appellant.

Jones, Skelton & Hochuli, PLC By William R. Jones, Eileen Dennis GilBride, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Anthony Yeung, M.D., sued Zoran Maric, M.D., for defamation and false light invasion of privacy. The trial court granted summary judgment to Dr. Maric, finding statements Dr. Maric made in an independent medical examination report—prepared in connection with a private, contractual arbitration proceeding—are protected by the absolute privilege afforded to participants in judicial proceedings. Dr. Yeung appeals, arguing that the trial court erred in finding Dr. Maric's statements are privileged. Because we agree with the trial court that the statements are covered by the absolute privilege, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Dr. Yeung is an orthopedic and spinal surgeon. In April 2002, he performed surgery on L.L. In May 2002, L.L. was involved in a motor vehicle accident. She sought treatment from Dr. Yeung for pain in her lower back. Ultimately, Dr. Yeung performed further surgery on L.L.'s spine. After the surgery, L.L. continued to seek treatment from other doctors and, in February 2005, another doctor performed spinal fusion surgery on L.L.

¶ 3 In September 2005, Dr. Maric saw L.L. for an independent medical exam (IME). L.L.'s insurer had requested that he perform the IME to "determine the relationship of [L.L.'s] pain complaints to the [May 2002] motor vehicle accident." L.L.'s attorney accompanied her to the exam. Dr. Maric concluded in his IME report there was no objective evidence that L.L. had suffered a physical injury from the May 2002 accident.

¶ 4 In his IME report, Dr. Maric criticized Dr. Yeung's treatment of L.L. Dr. Yeung subsequently filed an action against Dr. Maric in superior court alleging defamation and false light invasion of privacy based on state-

ments in the IME report.[1]  Dr. Maric moved for summary judgment, asserting, *inter alia,* the IME report had been "requested in the course of litigation" and his statements were therefore absolutely privileged.  Dr. Yeung responded that the statements were not privileged because the IME report had been prepared "during the course of private, contractual arbitration proceedings involving an uninsured/underinsured motorist policy" and such proceedings are not judicial proceedings.

¶ 5 The trial court granted Dr. Maric's motion for summary judgment, explaining:

Plaintiff acknowledged that the IME report of L.L. was prepared for an arbitration proceeding involving L.L. ... As a result, the Court concludes that [this] IME [report is] protected by an absolute privilege.... Although the IME of L.L. involved arbitration, the Court concludes that the reasons for providing immunity to a witness in a court proceeding also apply to a witness in an arbitration proceeding that the parties have agreed will be conducted in lieu of court proceedings.

¶ 6 Dr. Yeung filed a motion to reconsider, asserting there was no evidence the parties had agreed to the arbitration "in lieu of court proceedings."  The court denied the motion for reconsideration and also denied Dr. Yeung's subsequent motion for new trial. Dr. Yeung now appeals from the trial court's grant of summary judgment.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) and (F)(1) (2003).

**ANALYSIS**

¶ 7 We review a grant of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing summary judgment and construing any inferences in favor of that party." *Chalpin v. Snyder,* 220 Ariz. 413, 418, ¶ 17, 207 P.3d 666, 671 (App.2008). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a

matter of law."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons,* 201 Ariz. 474, 482, ¶ 14, 38 P.3d 12, 20 (2002).

¶ 8 The issue we must address is whether a witness in a private, contractual arbitration is protected by the absolute privilege that is afforded to participants in judicial proceedings.  Because the socially important interests promoted by the privilege are present in arbitrations as well as in judicial proceedings, we agree with the trial court and conclude the privilege does apply.

**The Absolute Privilege for Statements by Witnesses in Litigation**

¶ 9 It is well established in Arizona that statements that would otherwise be actionable in defamation will "escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation."  *Green Acres Trust v. London,* 141 Ariz. 609, 612, 688 P.2d 617, 620 (1984) (quoting Prosser, *Law of Torts* (4th Ed.1971) § 114, p. 776); *see also Darragh v. Superior Court,* 183 Ariz. 79, 81, 900 P.2d 1215, 1217 (App.1995); *W. Tech., Inc. v. Sverdrup & Parcel, Inc.,* 154 Ariz. 1, 4, 739 P.2d 1318, 1321 (App.1987).

¶ 10 Accordingly, Arizona courts have determined that witnesses in judicial proceedings are protected by an absolute privilege, and they are immune from civil suits arising from allegedly defamatory testimony during depositions and at trials.  *See, e.g., Darragh,* 183 Ariz. at 81, 900 P.2d at 1217. The absolute privilege in this area promotes the socially important interest of ensuring complete exposure of pertinent information for a tribunal's disposition.  *Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621.  A witness who fears subsequent damages liability might be reluctant to come forward to testify or "inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus deprive the finder of fact of candid, objective, and undistorted evi-

---

1.  Dr. Yeung alleged Dr. Maric had made defamatory statements about him in several IME reports of other patients, in addition to the IME report of L.L. Only the statements made in the IME report of L.L. are at issue in this appeal.

dence." *Briscoe v. LaHue,* 460 U.S. 325, 333, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The privilege is absolute, and the speaker's "motive, purpose or reasonableness in uttering a false statement [does] not affect the defense." *Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621.[2]

¶ 11 Arizona courts have held that the privilege extends to "reports, consultations, and advice" that are relevant to litigation and are prepared "as preliminary steps in the institution or defense of a case." *Darragh,* 183 Ariz. at 82, 900 P.2d at 1218; *see also W. Tech., Inc.,* 154 Ariz. at 4–5, 739 P.2d at 1321–22. Absent the privilege, a person who prepared a report as a preliminary step to litigation could be held liable on the ground that, although his deposition and trial testimony are privileged, his reports and conferences with his client are not. *Darragh,* 183 Ariz. at 82, 900 P.2d at 1218.

■ ¶ 12 To fall within the privilege, the defamatory statement need not be "strictly relevant" to the judicial proceeding, but it must relate to, bear on, or be connected with the judicial proceeding and have "some reference to the subject matter of the proposed or pending litigation." *Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621 (quoting Restatement (Second) of Torts 586, cmt. c). Also, the statement must be made in connection with a proceeding that is "actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *W. Tech., Inc.,* 154 Ariz. at 5, 739 P.2d at 1322 (quoting Restatement (Second) of Torts 588 cmt. e).

### Application of the Privilege In Private, Contractual Arbitrations

■ ¶ 13 The trial court ruled that the absolute privilege applies to witnesses in this private, contractual uninsured/underinsured motorist coverage arbitration. Dr. Yeung contends this was error. He argues the privilege should apply only when an arbitration proceeding contains minimum judicial safeguards, and he asserts the trial court failed to determine whether such safeguards were present at this arbitration. He also argues there was no evidence that legal proceedings were under serious consideration at the time Dr. Maric prepared the IME report, as may be required for the privilege to apply. *See W. Tech., Inc.,* 154 Ariz. at 5, 739 P.2d at 1322. Whether the privilege applies is a question of law that we review de novo. *See Green Acres Trust,* 141 Ariz. at 613, 688 P.2d at 621.

■ ¶ 14 Arizona courts have not yet addressed whether witnesses at arbitration proceedings are within the privilege. Our analysis begins with the Restatement (Second) of Torts § 588, which provides:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

*See Ledvina v. Cerasani,* 213 Ariz. 569, 572–73, ¶ 10, 146 P.3d 70, 73–74 (App.2006) (citing § 588 and stating Arizona views Restatement as authority in defamation cases in absence of controlling precedent). This privilege also applies to any matter that constitutes a false light invasion of privacy. *See* Restatement (Second) of Torts § 652F. Judicial proceedings are proceedings in which an officer or tribunal exercises "judicial functions." Restatement (Second) of Torts § 588 cmt. d. The Restatement further provides that "an arbitration proceeding may be included," *id.,* and explains that, "in a grievance proceeding arising under a collective bargaining agreement, the arbiter is exercising a judicial function, and the indications are that the protection of this Section extends to him as well." Restatement (Second) of Torts § 585 cmt. c.

2. The absolute privilege at issue here is a creature of the common law. In contrast, a panel of our colleagues has recently held that a doctor's allegedly defamatory statements to the Arizona Medical Board enjoy only a qualified privilege, based on the applicable Arizona statute. *See Advanced Cardiac Specialists, Chartered v. Tri-City Cardiology Consultants, P.C.,* 222 Ariz. 383, 388, ¶ 19, 214 P.3d 1024, 1029 (App.2009).

¶ 15 In *Craviolini v. Scholer & Fuller Associated Architects*, 89 Ariz. 24, 27, 357 P.2d 611, 613 (1961), our supreme court explained that arbitrators in private, contractual arbitrations exercise "quasi-judicial functions." The court stated that arbitrators are therefore protected by an absolute immunity: "The immunity in question here is one bestowed by public policy on those people who, by office or by contract, are called upon to act as judges. It is in every real sense a judicial immunity. It attaches to every act done in the judicial capacity.... In the role of arbitrator ... goes the cloak of immunity." *Id.* at 28, 357 P.2d at 614.

¶ 16 These principles support a corresponding immunity for witnesses who participate in arbitration proceedings. Arbitrators perform quasi-judicial functions, and arbitration proceedings are quasi-judicial in nature. Witnesses in private, contractual uninsured/underinsured motorist coverage arbitration proceedings should generally be covered by the absolute privilege regarding defamatory statements, assuming the statements are related to the proceeding and basic procedural safeguards—*see infra* ¶ 21—are present in the proceeding.

¶ 17 Several jurisdictions have determined that witnesses in private, contractual arbitrations are immune from suit. In *Moore v. Conliffe*, 7 Cal.4th 634, 29 Cal.Rptr.2d 152, 871 P.2d 204, 209 (1994), the California Supreme Court held: "It is apparent, upon even brief reflection, that the purposes of the litigation privilege ... strongly support application of the privilege to a witness who testifies in the course of a private, contractual arbitration proceeding." The court noted arbitration was designed to eliminate the need to resort to the court system and that "the risk that a witness's fear of potential liability either will deter the witness from testifying voluntarily at all, or in as candid and complete a manner as is essential to the truthseeking mission of the process, is as great in the arbitration setting as in a court proceeding." *Id.*

¶ 18 Similarly, in *Corbin v. Washington Fire and Marine Insurance Co.*, 398 F.2d 543 (4th Cir.1968), the Fourth Circuit of the United States Court of Appeals upheld a district court's determination that witnesses in private, contractual arbitrations are immune from suit. The district court in that case had noted that arbitrations require the presentation of evidence and that denying immunity to witnesses would make it difficult for arbitrators to obtain necessary evidence: "Freedom to develop a relevant record and to present pertinent arguments, without fear of reprisal by way of threatened libel or slander actions, is a necessary prerequisite to the fair resolution of any controversy through arbitration." *Corbin v. Washington Fire and Marine Ins. Co.*, 278 F.Supp. 393, 396 (D.S.C.1968). *See also Shearson Hayden Stone, Inc. v. Liang*, 493 F.Supp. 104, 109 (N.D.Ill.1980); *Gilbert v. Sperbeck*, 126 P.3d 1057, 1059–60 (Alaska 2005); *Kloch v. Ratcliffe*, 221 Neb. 241, 375 N.W.2d 916, 919–921 (1985).

¶ 19 Dr. Yeung contends the absolute privilege should apply to arbitration proceedings only when minimum judicial safeguards are in place.[3] He argues there was no evidence of such safeguards before the trial court. He points out the trial court did not know the terms or restrictions of the arbitration agreement or what rules applied, and he contends there was no evidence of whether the arbitration was binding, the arbitrator was qualified, Dr. Maric testified at the arbitration, the IME report was used at the proceeding, or the arbitration had been mandated by L.L.'s insurance policy or separately agreed upon by the parties.

¶ 20 The record establishes that the IME report was prepared during the course of private, contractual arbitration proceedings involving an uninsured/underinsured motorist

---

**3.** In support of this proposition, Dr. Yeung cites *Rolon v. Henneman*, 517 F.3d 140 (2d Cir.2008), *Odyniec v. Schneider*, 322 Md. 520, 588 A.2d 786 (1991), and *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F.Supp.2d 909 (E.D.Va.2004), among other cases. Each case suggests the privilege should apply only when certain procedural safeguards are present at the arbitration, such as the ability to issue subpoenas or to require testimony under oath. As explained herein, we find the safeguards in this case sufficient.

policy.[4] We acknowledge that such arbitrations do not necessarily operate in the same way and with the same safeguards as full scale judicial litigation. But Arizona public policy favors arbitration as a means of disposing of controversies, *Allstate Ins. Co. v. Cook*, 21 Ariz.App. 313, 315, 519 P.2d 66, 68 (1974), and to that end Arizona has enacted the Uniform Arbitration Act. *See Foy v. Thorp*, 186 Ariz. 151, 153, 920 P.2d 31, 33 (App.1996). Under the Act, parties to arbitration must be provided notice of the proceeding, are entitled to present evidence, and may be represented by an attorney, and the arbitrator may issue subpoenas and has the power to administer oaths. *See* A.R.S. §§ 12–1505 to 12–1507 (2003). We believe these safeguards make arbitration sufficiently analogous to judicial litigation to warrant application of the privilege.[5] *See Jeanes v. Arrow Ins. Co.*, 16 Ariz.App. 589, 591–92, 494 P.2d 1334, 1336–37 (1972) (applying Act in uninsured motorist coverage context, in support of enforcing arbitration provision in policy); Steven Plitt, *Arizona Liability Insurance Law* § 4.2, at 229–240 (1998) (discussing applicability of Act to uninsured/underinsured motorist coverage arbitration).

 ¶ 21 The absolute privilege afforded to participants in judicial proceedings is rooted in public policy. *See, e.g., Linder v. Brown & Herrick*, 189 Ariz. 398, 406, 943 P.2d 758, 766 (App.1997). We agree with the reasoning in *Moore*, 29 Cal.Rptr.2d 152, 871 P.2d at 205, and the reasoning affirmed in *Corbin*, 278 F.Supp. at 396, that public policy supports extending the absolute privilege to participants in private, contractual arbitration proceedings. Witnesses in arbitrations serve the socially important interest of providing arbitrators the evidence necessary to dispose of the case, and they must be protected from the threat of litigation, even at the expense of uncompensated harm to another person's reputation. Because Dr. Mar-

ic prepared the IME report in preparation for a private, contractual arbitration, his statements are absolutely privileged.

¶ 22 Dr. Yeung next argues there was no evidence that litigation was seriously contemplated at the time Dr. Maric issued his IME report. Dr. Maric testified at his deposition, however, that he believed L.L.'s case was being litigated when he prepared the IME report. And L.L.'s case was in fact arbitrated. The trial court did not err in finding the report was prepared in connection with an anticipated or seriously contemplated arbitration proceeding.

¶ 23 Dr. Yeung also cites *Ritchie v. Krasner*, 221 Ariz. 288, 211 P.3d 1272 (App.2009), in a supplemental citation of authority. The IME report in that case, unlike here, was not prepared for litigation or arbitration, and statements in the IME report were therefore not eligible for the absolute privilege afforded to participants in judicial proceedings. *Id.* at ¶¶ 58–59. Additionally, *Ritchie* was a malpractice action, not a defamation claim. *Id.* at ¶ 2. For these reasons, we do not find *Ritchie* to be apposite here.

## CONCLUSION

¶ 24 Because we agree with the trial court that an absolute privilege protects Dr. Maric from potential liability for allegedly defamatory statements made in his IME report, we affirm the summary judgment.

CONCURRING: JON W. THOMPSON, and PATRICK IRVINE, Judges.

---

4. "Uninsured motorist insurance policies almost uniformly include provisions which specify that some of the issues that may arise when an insured makes a claim for insurance benefits shall be submitted to arbitration." 2 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 22.1, at 297 (3d ed.2005).

5. These safeguards apply in the absence of an agreement to the contrary, *see* A.R.S. §§ 12–1503 and 12–1505, and there is nothing in the record that suggests the arbitration provision in this case contains contrary provisions.