NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARY E. RIORDAN-KARLSSON, *Plaintiff/Appellant*,

*v.*

ARIZONA BANK & TRUST, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0147
FILED 3-20-2018

Appeal from the Superior Court in Maricopa County
No. CV 2014-013010
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Mary E. Riordan-Karlsson, Scottsdale
*Plaintiff/Appellant*

Engelman Berger, P.C., Phoenix
By Scott B. Cohen, Bradley D. Pack
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which
Presiding Judge Lawrence F. Winthrop and Judge Paul J. McMurdie joined.

**C A M P B E L L**, Judge:

¶1 Mary E. Riordan-Karlsson appeals the superior court's order dismissing, with prejudice, claims of defamation against Arizona Bank & Trust and Timothy Nichols (collectively, "Defendants"). Riordan-Karlsson also challenges the court's denial of a motion to compel discovery, and alleges "perjury and fraud" against Nichols, a bank loan officer.[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Beginning in December 2005, Heritage Bank and Bridgeview Bank Group made a series of loans (collectively, the "Loans") to various limited liability companies (collectively, the "Karlsson Entities") owned by Sven Karlsson and Mary Riordan-Karlsson (the "Karlssons"), a married couple. Arizona Bank & Trust ("AZBT") acquired Heritage Bank and Bridgeview. Timothy Nichols was the loan officer at Heritage Bank responsible for the Loans, and he remained the loan officer following AZBT's acquisition of Heritage Bank. The Karlsson Entities defaulted on the Loans. Despite multiple default notices, the Karlssons did not cure the defaults.

¶3 In early September 2013, Nichols met with Sven Karlsson to discuss the default status of the Loans. During that meeting, Sven Karlsson

---

[1] We lack jurisdiction to consider Riordan-Karlsson's arguments regarding the superior court's ruling on her motion to compel discovery and allegations that "Defendant [Nichols] Committed Perjury and Fraud." We consider only those issues properly designated in her notice of appeal from the December 7, 2016 ruling and January 10, 2017 order. *See* ARCAP 8(c) (requiring appellant to designate the judgment appealed from); *Premier Fin. Servs. v. Citibank*, 185 Ariz. 80, 87 (App. 1995) (no jurisdiction to review rulings not contained in notice of appeal). Additionally, Riordan-Karlsson did not include any issues related to discovery in her statement of issues in her opening brief, and she did not file a statement of issues pursuant to ARCAP 11(c)(3)(B). She has therefore waived any additional issues. ARCAP 13(a)(7)(B) (appellant's brief must contain "references to the record on appeal where the particular issue was raised and ruled on"); *Gibson v. Boyle*, 139 Ariz. 512, 521 (App. 1983) ("An appellant must specify with particularity and with transcript reference such rulings of the trial court as [s]he desires to question on appeal . . . . This court is not obligated to search the record to ascertain if appellant has properly raised an objection below.").

stated that he was getting a divorce, and suggested that Mary Riordan-Karlsson had committed embezzlement and infidelity.

¶4 Shortly after meeting with Sven Karlsson, Nichols reported his meeting to his supervisor Jim Klussman, who was AZBT's Chief Credit Officer. In speaking with Klussman, Nichols said that he was merely reporting that Karlsson made the allegations of embezzlement and infidelity, and that he did not know the veracity of the allegations. Nichols believed he had a duty to report this information. His belief stemmed solely from his concern that if true, the events would significantly affect the likelihood of continued Loan defaults.

¶5 Following his discussion with Klussman, Nichols did not have any further involvement with the Loans. Bobby C. Thompson, Vice President—Special Assets Group of AZBT, assumed all responsibility for the Loans. Thompson made the decision to sue the Karlsson Entities and the Karlssons.

¶6 AZBT moved for summary judgment on its claims against Riordan-Karlsson, which the Court granted. On September 17, 2014, the court entered judgment against Riordan-Karlsson in the principal amount of $1,645,297.87, plus accrued interest, costs, and attorney fees.

¶7 On October 10, 2014, Riordan-Karlsson filed a complaint naming as defendants Heartland Financial, AZBT, Timothy Nichols, and Bobby Thompson (collectively, the "Bank Defendants"), along with Sven Karlsson.[2] The complaint alleged that during a September 2013 meeting between Sven Karlsson and Nichols, Sven Karlsson made defamatory comments about Riordan-Karlsson. The complaint further alleged that Nichols repeated those comments "to his superiors," and that as a result, AZBT "accelerated their foreclosure proceedings" with respect to the Loans to the Karlsson Entities. Riordan-Karlsson sought damages from all defendants for the alleged defamation.

¶8 AZBT and Nichols moved for summary judgment, arguing that: (1) the complaint was barred by the one-year statute of limitations of Arizona Revised Statutes ("A.R.S.") section 12-541; (2) Nichols had an absolute privilege to communicate allegedly defamatory material in communications made preliminary to or in the institution of a judicial

---

[2] The superior court dismissed Riordan-Karlsson's claims against Heartland Financial USA, Inc. and Bobby Thompson without prejudice on April 16, 2015.

proceeding; (3) Nichols had a conditional privilege based upon his and AZBT's common interest as to the Loans; (4) Nichols had a conditional privilege based upon his belief that Sven Karlsson's statements affected a substantially important interest of AZBT; (5) there was no evidence of any malice on the part of Nichols; and (6) there was no evidence that Riordan-Karlsson had suffered any damages.

¶9        Following briefing and oral argument, the court found that "[s]ince the statements were reportedly made in September 2013, and the suit was not filed until October 10, 2014, the filing of the suit was not timely" under A.R.S. § 12-541(1). The court also held that "Mr. Nichols'[s] reporting of Mr. Karlsson's statements to his superiors was absolutely privileged" because it was made in connection with a judicial proceeding. It noted, quoting *Yeung v. Maric*, 224 Ariz. 499, 502, ¶ 11 (App. 2010), that the privilege "extends to communications that are 'preliminary steps in the institution or defense of a case,'" and acknowledged that the allegedly "defamatory statement need not be 'strictly relevant' to the judicial proceeding" as long as it has "some reference to the subject matter of the proposed or pending litigation." The court thus granted the motion for summary judgment, but did not address the other arguments raised in the motion.

¶10        In January 2017, the court entered judgment in favor of AZBT and Nichols. The order included language that the judgment was "final pursuant to [Arizona Rule of Civil Procedure 54(b)] notwithstanding the pendency of any unresolved claims against other parties."

## DISCUSSION

¶11        Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review a superior court's grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion. *Strojnik v. Gen. Ins. Co. of Am.,* 201 Ariz. 430, 433, ¶ 10 (App. 2001); *BAC Home Loans Servicing, LP v. Semper Inv. LLC*, 230 Ariz. 587, 589, ¶ 2 (App. 2012). "Once the defendant has established a *prima facie* case entitling him to summary judgment, the plaintiff has the burden of showing available, competent evidence that would justify a trial." *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 156 (App. 1993) (citation omitted). A claim will not withstand a motion for summary judgment if "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the

4

conclusion advanced by the proponent." *Orme School v. Reeves,* 166 Ariz. 301, 309 (1990). Additionally, "[w]e will affirm if the trial court's disposition is correct for any reason." *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996).

**¶12** To successfully plead a claim for defamation, Riordan-Karlsson must allege that: the defendants made a false statement concerning the plaintiff to a third party; the defendants acted knowingly, recklessly, or negligently in disregarding the falsity of the statement; and the statement harms the plaintiff's reputation for honesty, integrity, or virtue, or otherwise brings the plaintiff into disrepute. *Turner v. Devlin*, 174 Ariz. 201, 204 (1993); Restatement (Second) of Torts ("Restatement") § 558 (1977).

**¶13** "It is well established in Arizona that statements that would otherwise be actionable in defamation will escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." *Yeung*, 224 Ariz. at 501, ¶ 9 (citation omitted). "Accordingly, Arizona courts have determined that witnesses in judicial proceedings are protected by an absolute privilege, and they are immune from civil suits arising from allegedly defamatory testimony during depositions and at trials." *Id.* at 501, ¶ 10. This privilege also "extends to reports, consultations, and advice that are relevant to litigation and are prepared as preliminary steps in the institution or defense of a case." *Id.* at 502, ¶ 11 (citations omitted).

**¶14** "To fall within the privilege, the defamatory statement need not be strictly relevant to the judicial proceeding, but it must relate to, bear on, or be connected with the judicial proceeding and have some reference to the subject matter of the proposed or pending litigation." *Id.* at 502, ¶ 12 (citations omitted). Finally, the statement must be made in connection with a proceeding that is "actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Id.* at 502, ¶ 12 (citations omitted).

**¶15** Riordan-Karlsson argues that the Defendants are not protected by absolute privilege because the privilege "does not apply in administrative proceedings," but she does not explain why she considers the impending litigation over the 16 loans in default status to be "administrative." Riordan-Karlsson also argues that the privilege should not apply "because the meeting was not sufficiently judicial in character."

It is not the character of the meeting that is important; rather, what is important is whether the allegedly defamatory statement "relate[s] to, bear[s] on, or [is] connected with the judicial proceeding and ha[s] some reference to the subject matter of the proposed or pending litigation." *Id.* Whether the privilege applies is a question of law that we review de novo. *See Green Acres Tr. v. London*, 141 Ariz. 609, 613 (1984).

**¶16**　　　　The complaint states that the alleged defamatory statements were made by Sven Karlsson at a meeting with Nichols in September 2013. The record supports the superior court's finding that further dissemination of the statements by Nichols to his supervisors at AZBT occurred shortly after his meeting with Sven Karlsson and before October 10, 2013. At the time the statements were published, AZBT had already sent the Karlssons two notices of default. Counsel for AZBT sent its final notice of default and demand for immediate payment on October 11, 2013, less than a month after the statements were published. AZBT initiated litigation on October 22, 2013, and the superior court entered judgment against Riordan-Karlsson on September 17, 2014.

**¶17**　　　　Based on this timeline, it is evident that litigation pertaining to default was not only contemplated, it was imminent. Further, Sven Karlsson's insight into the stability of the Karlsson's marriage and alleged misconduct within the Karlsson Entities was relevant to "the subject matter of the proposed or pending litigation"—specifically, the likelihood the Karlssons would cure the defaulted loans. *Yeung*, 141 Ariz. at 502, ¶ 12. On this record, we agree with the superior court's ruling that the allegedly defamatory statements as disseminated by Nichols to AZBT were absolutely privileged. As such, summary judgment was properly granted in favor of Defendants.

**¶18**　　　　Further, because the privilege determination warrants dismissal of claims against Nichols and AZBT, we need not address whether Riordan-Karlsson's claims were barred by the statute of limitations.

## CONCLUSION

**¶19** For the foregoing reasons, we affirm the superior court's grant of summary judgment in favor of Defendants.



AMY M. WOOD • Clerk of the Court
FILED: AA