NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

LISA RANDALL, individually; BRENNA RANDALL, individually;
TRACY ALLEN, individually, *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

MARICOPA COUNTY; KEVIN D. HORN, *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 14-0431
FILED 3-8-2016

Appeal from the Superior Court in Maricopa County
No.  CV2011-011867
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

COUNSEL

Jones, Skelton & Hochuli, P.L.C., Phoenix
By William R. Jones, Jr., Kathleen S. Elder,
Lori L. Voepel, Eileen D. GilBride
*Counsel for Defendants/Appellants/Cross-Appellees*

Aiken Schenk Hawkins & Ricciardi, P.C., Phoenix
By Richard M. Gerry
*Counsel for Plaintiffs/Appellees/Cross-Appellants Randall*

Plattner Verderame, P.C., Phoenix
By Richard Plattner
*Counsel for Plaintiff/Appellee/Cross-Appellant Tracy Allen*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

¶1        Maricopa County and Dr. Kevin D. Horn (collectively "Defendants") appeal the ruling granting a new trial to Lisa Randall ("Randall"), Brenna Randall, and Tracy Allen[1] (collectively "Plaintiffs"). Plaintiffs also challenge, by cross-appeal, the ruling granting Defendants partial summary judgment on the issue of Dr. Horn's qualified immunity. For the following reasons we affirm the superior court's rulings.

### FACTS AND PROCEDURAL HISTORY

¶2        A four-and-a-half month-old infant was found unresponsive in Randall's in-home daycare in April 2007, and passed away the next day. Dr. Horn, the Maricopa County medical examiner, conducted an autopsy and determined the infant's death was a homicide, caused by blunt force trauma of the head and neck. Randall was indicted for the infant's murder, but the case was remanded back to the grand jury. The charges were dismissed, then refiled by direct complaint, and, at the preliminary hearing, the court found probable cause to proceed to trial.

¶3        The State became concerned, however, after receiving a report from another of its experts that was inconsistent with the Horn report. Internally, the case was submitted to the County Attorney Office's Incident Review Committee, which determined it should not be pursued, and the State subsequently dismissed the criminal charges with prejudice.

---

[1] Lisa Randall was married to Tracy Allen at the time of the incident and subsequent prosecution, and Brenna Randall is Lisa Randall's adult daughter.

¶4　　　　After filing a notice of claim, Randall filed this civil action against multiple parties,[2] including Defendants.  The case proceeded to trial against Defendants,[3] and the jury returned a defense verdict.  Plaintiffs filed motions for mistrial, sanctions, and a new trial.  After the oral argument, the court granted the motion for new trial.  Defendants moved for reconsideration and filed a notice of appeal.  We stayed the appeal to allow the superior court to resolve the pending motion and after the motion was denied, the appeal was reinstated, including Plaintiffs' challenge to the ruling granting Dr. Horn common-law qualified immunity.　We have jurisdiction over the appeal and cross-appeal under Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (5)(a).[4]

## DISCUSSION

### I.　　Motion for New Trial

¶5　　　　Defendants argue the superior court abused its discretion by granting a new trial.  Specifically, they argue the court applied an incorrect legal standard in granting the new trial because the court improperly presumed prejudice under *Leavy v. Parsell*, 188 Ariz. 69, 932 P.2d 1340 (1997), given that the case was not close, no motion for mistrial was filed, and the court never found that any trial misconduct was serious, knowing, and deliberate, and disregarded its curative instruction to the jury.  They also argue the court abused its discretion by granting the motion for new trial based "solely" on "one question to Dr. Posey" even though the court struck the question and instructed the jury to disregard it.

¶6　　　　We review a grant of a new trial for an abuse of discretion. *McBride v. Kieckhefer Assocs., Inc.*, 228 Ariz. 262, 266, ¶ 16, 265 P.3d 1061, 1065 (App. 2011).  If the court gives multiple reasons for its decision, we will uphold the ruling if justified on any of the grounds.  *Johnson v. Elliott*, 112 Ariz. 57, 61, 537 P.2d 927, 931 (1975) (citation omitted); *see Crowe v. Miller*, 27 Ariz. App. 453, 455, 555 P.2d 1141, 1143 (1976) (citations omitted).  We,

---

[2] Plaintiffs' amended complaint listed claims of malicious prosecution, abuse of process, false arrest and imprisonment, defamation, false light/invasion of privacy, intentional and negligent infliction of emotion distress, negligence per se, aiding and abetting tortious conduct, and racketeering against Maricopa County, the City of Peoria, and various individuals and their spouses.

[3] The other defendants were dismissed before trial.

[4] We cite the current version of the statute unless otherwise noted.

however, review the court's interpretation of a rule of procedure de novo because it is a matter of law. *See Felipe v. Theme Tech. Corp.*, 235 Ariz. 520, 524, ¶ 10, 334 P.3d 210, 214 (App. 2014).

## A. Legal Standard

**¶7**      A superior court may vacate a verdict and order a new trial under Arizona Rule of Civil Procedure 59(a).  The court must find that a party's rights are materially affected by one of many causes, including "1. [i]rregularity in the proceedings . . . whereby the moving party was deprived of a fair trial," or "2. [m]isconduct of the jury or prevailing party." Ariz. R. Civ. P. 59(a)(1), (2).  However, the court should only grant a new trial when it believes "that there has been some error in the conduct of the original trial which, in all probability, has affected the verdict."  *S. Ariz. Freight Lines v. Jackson*, 48 Ariz. 509, 512, 63 P.2d 193, 195 (1936).

**¶8**      Our supreme court has stated that the grant of a "new trial on the grounds of misconduct of counsel is a matter within the trial court's discretion" but it is "only to prevent a miscarriage of justice . . . or . . . for a cause materially affecting [the] rights . . . of the aggrieved party." *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 451, 652 P.2d 507, 524 (1982) (*citing Zugsmith v. Mullins*, 86 Ariz. 236, 238, 344 P.2d 739, 740 (1959) (internal quotation marks and citations omitted).  In *Leavy*, the court revisited its analysis and stated "misconduct alone will not warrant a new trial and that the grant . . . of a new trial based on misconduct is within the judge's discretion."  188 Ariz. at 73, 932 P.2d at 1344 (citing *Grant*, 133 Ariz. at 454, 652 P.2d at 527).  However, after noting "it is impossible for a party to carry the burden of proving prejudice when the misconduct or error prevents the court from determining the exact extent of prejudice," the court stated "the trial [court] should find prejudice," when:

> (1) the misconduct is significant, especially if the record establishes knowing, deliberate violations of rules or court orders that a litigant may confidently expect to be observed by his or her adversary; (2) the misconduct is prejudicial in nature because it involves essential and important issues, but the extent is impossible to determine in a close case; and (3) the misconduct is apparently successful in achieving its goals.

*Id*.  The court also noted that when the factors are present "prejudice should be inferred, absent an affirmative showing to the contrary by the guilty party."  *Id.*  Consequently, because the trial judge sits as the "ninth juror" in a civil case, *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 23, 961 P.2d

449, 453 (1998), we defer to the court's ruling, recognizing that the "judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record." *Id.* at 53, ¶ 12, 961 P.2d at 451 (citation omitted).

**¶9** Moreover, and contrary to Defendants' argument that Plaintiffs' failure to seek a mistrial questions whether they thought "the alleged misconduct [w]as prejudicial enough to warrant a new trial," a motion for mistrial is not a prerequisite to requesting a new trial. *See Miller v. Palmer*, 143 Ariz. 84, 86, 691 P.2d 1112, 1114 (App. 1984) ("A motion for a new trial need not be predicated upon a failed motion for mistrial."). Similarly, a court does not have to sua sponte grant a mistrial for misconduct, and the court's failure to do so gets no greater weight than its ultimate conclusion that a new trial is warranted because of prejudicial misconduct. *See Liberatore v. Thompson*, 157 Ariz. 612, 621, 760 P.2d 612, 621 (App. 1988) (finding that initial trial determination that misconduct did not warrant a mistrial would not be given priority over "ultimate conclusion, informed by the verdict, that misconduct had cumulatively colored the result.").

## B.  Analysis

**¶10** Here, after an extensive argument about the facts and law, the superior court summarized *Leavy* as follows:  (1) the misconduct has to be significant, such as violations of rules or "court orders, that a litigant may confidently expect to be observed by his or her adversary;" (2) the misconduct is prejudicial "because it involves essential and important issues that the extent is impossible to determine in a close case;" and (3) "the misconduct is apparently successful in achieving its goals." Then, after noting the case was "very difficult . . . with really all issues hotly contested," the court found "it's a close case" with "multiple violations of court rule or court order."

**¶11** The court then found three acts of misconduct warranting a new trial.  First, the court found that Defendants violated the discovery rule/disclosure rule by failing to disclose that there were two linear fractures to the deceased infants' skull, which Defendants' expert had made clear to them on the eve of trial, and then using the information in the opening statement without notifying Plaintiffs.  Second, despite the court's ruling that the probable cause finding could not be discussed, counsel asked Dr. Posey a question about the criminal judge's opinion, and the court found it "was a direct violation of the '[c]ourt's Motion in Limine ruling'"

and violated both the spirit and intent of the ruling. Finally, the court found that Defendants' questioning of the treating physicians "was done in a way that elicited objections that were sustained . . . all creating an impression . . . that [Plaintiffs] are trying to keep something from th[e] jury that . . . had [been] ordered the jury shouldn't hear." The court subsequently denied Defendants' motion for reconsideration, which focused on whether the question about the criminal judge's probable cause ruling, which had been struck with an instruction to the jury to disregard the question, was sufficiently prejudicial to justify a new trial.

¶12 Although Defendants challenge the court's analysis of the law, we see no error. *Leavy,* like its predecessors, gives the trial court discretion to grant a new trial where there is misconduct and prejudice because "misconduct alone will not warrant a new trial." 188 Ariz. at 73, 932 P.2d at 1344. Historically, a new trial should be granted to prevent a miscarriage of justice or for a cause materially affecting the rights of the aggrieved party. *Zugsmith*, 86 Ariz. at 238, 344 P.2d at 740. As the court noted in *Grant*, "the prime factor to consider is whether the record clearly establishes that the improper conduct caused the jury to return a verdict which was the result of passion and prejudice." 133 Ariz. at 452, 652 P.2d at 525.

¶13 *Leavy*, however, involved violations of pre-trial orders which precluded the defendants from raising the seat-belt defense and an expert's testimony about the credibility of certain accident witnesses, as well as evidence that the plaintiff's bottle of whiskey was found near the accident site because there was no evidence of use or impairment. 188 Ariz. at 70-71, 932 P.2d at 1341-42. After a defense verdict, the trial court denied the plaintiff's motion for new trial, and the ruling was affirmed on appeal. *Id.* at 71-72, 932 P.2d at 1342-43. In reversing the ruling and focusing on the lawyer's conduct violating pre-trial court orders, our supreme court constructed an analysis to judge any prejudice when "there has been significant misconduct affecting the essential rights of a litigant and when the very nature of the misconduct makes it impossible to determine the extent of prejudice." *Id.* at 73, 932 P.2d at 1344. The court established a three-pronged prejudice analysis for guidance to find prejudice "absent an affirmative showing to the contrary." *Id.* As a result, the trial court, as the ninth juror, has to decide whether the misconduct significantly tipped the scales of justice such that a new trial is warranted.

¶14        Here, Plaintiffs filed a successful motion in limine to preclude any evidence about the finding of probable cause for the criminal charges. Despite the ruling, one of Defendants' lawyers asked Dr. Posey:

> Q.  So while your professional opinions as to the cause and manner of [the child's] death were presented at a preliminary hearing, they were not accepted?

The court struck the question after an objection, and instructed the jury "I'm going to strike counsel's statement.  It's not evidence and the jury is to disregard it."  Later, out of the presence of the jury, Plaintiffs argued the question violated the court's prior ruling by mentioning that Dr. Posey's opinions had been rejected at a preliminary hearing, thereby implying that a probable cause finding had been made, without explicitly using those terms.  In response, counsel stated that the error was inadvertent, and the court accepted her explanation.

¶15        During the post-trial hearing on the motions, the court found that despite the assertion that the question was inadvertent, it still qualified as significant and prejudicial misconduct.  Later, and in denying the motion for reconsideration, the court explained that even if the misconduct was limited to the improper question, the misconduct was significant, involved "important and essential issues" in a case that was hotly contested on all issues,[5] and, as a result, Defendants achieved their desired verdict.

¶16        Although Defendants contend that any prejudice was remedied by the court's curative instruction to the jury, the court disagreed.  Our supreme court has long held that a trial court "can best determine whether [its] admonition is effective," given any "improper attempts by counsel to mislead and arouse the prejudices of the jury," *Sanchez v. Stremel*, 95 Ariz. 392, 395, 391 P.2d 557, 559 (1964), and given that the "atmosphere or climate of the trial is peculiarly within the knowledge and experience of the trial court."  *Colfer v. Ballantyne*, 89 Ariz. 408, 409, 363 P.2d 588, 589 (1961).  Moreover, we routinely defer to the court's determination that there was prejudicial misconduct that affected another's rights.  *See Ritchie v. Krasner*, 221 Ariz. 288, 303, ¶ 52, 211 P.3d 1272, 1287 (App. 2009) ("The trial judge is in the best position to 'decide whether the misconduct materially affected the rights of the aggrieved party.'") (citations omitted).

---

[5] In discussing whether the case was a "close case," the court did not find the phrase informative.

¶17 Defendants also argue that the one question to Dr. Posey was, in essence, the only basis for the grant of a new trial. Although the ruling on reconsideration did not change the grant of new trial or its three factual reasons, the "court's fundamental finding [was] that the misconduct of counsel warranted a new trial." *Liberatore*, 157 Ariz. at 621, 760 P.2d at 621. Even though, as Defendants note, the court had addressed the issues as they arose during trial, those "contemporaneous [rulings]" are not given priority "over [the court's] ultimate conclusion, informed by the verdict, that misconduct ha[s] cumulatively colored the result." *Id.* As a result, we do not find an abuse of discretion warranting reversing the ruling.

## II.     Medical Examiner and Qualified Immunity

¶18 In their cross-appeal, Plaintiffs argue the superior court erred by granting Defendants' cross-motion for partial summary judgment on qualified immunity. We disagree.

¶19 We review the grant of partial summary judgment de novo to determine "whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Adams v. State*, 185 Ariz. 440, 443, 916 P.2d 1156, 1159 (App. 1995) (citation omitted). We view the evidence in the light most favorable to the party against whom summary judgment was entered, resolving all inferences arising from the evidence in that party's favor. *Id.* We review questions of statutory construction and the existence and scope of privilege de novo. *Advanced Cardiac Specialists, Chartered v. Tri-City Cardiology Consultants, P.C.*, 222 Ariz. 383, 386, ¶ 6, 214 P.3d 1024, 1027 (App. 2009) (citations omitted); *State v. Gallagher*, 205 Ariz. 267, 269, ¶ 5, 69 P.3d 38, 40 (App. 2003).

¶20 In interpreting statutes, our primary goal is to determine and give effect to the legislature's intent. *Greenwood v. State*, 217 Ariz. 438, 442, ¶ 16, 175 P.3d 687, 691 (App. 2008) (citation omitted). We first consider the statutory language which provides "the best and most reliable index of a statute's meaning." *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 6, 219 P.3d 285, 287 (App. 2009) (quoting *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)). If the language is clear and unambiguous, we will follow the text as written and need not resort to other methods of statutory construction. *Id.* at 78, ¶ 7, 219 P.3d at 288. Only if the statute is ambiguous will we examine "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Glazer v. State*, 237 Ariz. 160, 163, ¶ 12, 347 P.3d 1141, 1144 (2015) (citation omitted).

**¶21** Immunity is the exception in Arizona, and we "narrowly construe immunity provisions applicable to government entities." *Greenwood*, 217 Ariz. at 442-43, ¶ 16, 175 P.3d at 691-92 (citation omitted). When the Actions Against Public Entities or Public Employees Act was enacted in 1984, *Glazer*, 237 Ariz. at 163, ¶ 11, 347 P.3d at 1144 (citing 1984 Ariz. Sess. Laws, ch. 285 (2d Reg. Sess.) (codified at A.R.S. §§ 12–820 to –826)), the legislation provided that "[e]xcept as specifically provided in this article, this article shall not be construed to affect, alter or otherwise modify any other rules of tort immunity regarding public entities and public officers as developed at common law and as established under the statutes and the constitution of this state," A.R.S. § 12-820.05(A). The plain language of the statute clearly provides that common-law immunity was not displaced, and, as a result, common-law immunity may still apply under some circumstances not explicitly stated in the immunity statutes. *See, e.g.*, *State v. Superior Court (Ford)*, 186 Ariz. 294, 297, 921 P.2d 697, 700 (App. 1996) (applying common-law immunity to quasi-judicial prosecutorial acts after enactment of Actions Against Public Entities or Public Employees Act).

**¶22** A county medical examiner is statutorily required during a death investigation to determine whether an autopsy is necessary, and to "[c]ertify to the cause and manner of death following completion of the death investigation . . . reduce the findings to writing and promptly make a full report on forms prescribed for that purpose." A.R.S. § 11-594(A)(2). Because of their statutory duties, the Arizona legislature granted immunity to medical examiners for death investigations. Specifically, and at the time of this investigation, § 11-597(H) provided that "[w]hen an autopsy or other tests are performed by a forensic pathologist, no cause of action shall lie against the physician or any other person for requesting the autopsy, for participating in the autopsy." A.R.S. § 11-597(H) (2012).[6] Although there is an argument that the statutory language granted absolute immunity, the superior court found the statute did not cover the manner of conducting the investigation resulting in the cause and manner-of-death determination. The court, as a result, found Defendants were protected by common-law qualified immunity, and allowed the case to proceed because Plaintiffs had

---

[6] The Legislature modified the statute in 2014, and it now provides: "[w]hen a death investigation, including an . . . autopsy or other tests are performed by the county medical examiner . . . no cause of action shall lie against the physician or any other person for requesting, performing, participating in or determining the cause and manner of death or otherwise reporting the results from the external examination, death investigation, autopsy or other tests." A.R.S. § 11-597(H) (West 2016).

alleged that Dr. Horn acted with a reckless disregard for the truth in reaching his conclusions on the cause and manner of the child's death and "failed to competently and good faith perform [his] statutory duties."

**¶23** Plaintiffs now contend, however, that Dr. Horn should not have any immunity, much less qualified common-law immunity, because of the manner in which he conducted the death investigation and came to his conclusions about the cause and manner of death. Defendants, on the other hand, argue the court did not err because Dr. Horn is entitled to common-law qualified immunity.[7]

**¶24** The Legislature did not abrogate common-law qualified immunity with the enactment of § 11-597(H). The statute did not clearly and expressly abrogate common-law immunity or common-law qualified immunity. *See Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422, ¶ 12, 87 P.3d 831, 835 (2004) (holding that to change or abrogate common law by statute, legislature must do so expressly, and "[a]bsent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with 'every intendment in favor of consistency with the common law.'") (citation omitted).

**¶25** Moreover, common-law qualified immunity applies when "officials are setting policy or performing an act that inherently requires judgment or discretion." *Chamberlain v. Mathis*, 151 Ariz. 551, 555, 729 P.2d 905, 909 (1986); *see* Restatement (Second) of Torts § 895(D)(3) (1979) ("A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if (a) he is immune because engaged in the exercise of a discretionary function."); *id.* at cmt. b (stating that common-law immunity for public officer performing discretionary function based on need to preserve "independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits" and the unfairness of requiring officer to exercise discretion and be held responsible according to judgment of those who are less qualified and may have no experience in the area, or who may be acting

---

[7] Defendants unsuccessfully sought to be dismissed from the case based on absolute immunity. The court subsequently denied Plaintiffs' motion for summary judgment on gross negligence and recognized that Dr. Horn has common-law qualified immunity. Defendants neither sought judgment as a matter of law on the absolute-immunity claim under Arizona Rule of Civil Procedure 50(b), nor raised the issue in their opening brief. As a result, we will not address the absolute-immunity ruling. *See State v. Moody*, 208 Ariz. 424, 452 n.9, ¶ 101, 94 P.3d 1119, 1147 n.9 (2004).

in hindsight). Although common-law qualified immunity does not apply to acts "such as driving a car or moving furniture," *Chamberlain*, 151 Ariz. at 556, 729 P.2d at 910, acts by executive government officials are entitled to qualified immunity "in order to advance important public objectives: effective government administered by skilled government officials." *Id.* In fact, our supreme court stated that "[q]ualified immunity protects government officials from liability for acts within the scope of their public duties unless the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Id.* at 558, 729 P.2d at 912 (citation omitted); *see also Pinal Cty. v. Cooper*, 238 Ariz. 346, 349-50, ¶ 10, 360 P.3d 142, 145-46 (App. 2015).

**¶26** There is no doubt that Dr. Horn is an executive government official - the county medical examiner, who is statutorily charged with conducting death investigations. *See Chamberlain*, 151 Ariz. at 553, 555, 729 P.2d at 907, 909 (mentioning examples of executive government officials that include police officers, members of the board of pardons and paroles, and other state employees); *see also* A.R.S. § 11-201(A) (stating a county's power is exercised by the board of supervisors and agents and officers acting under its authority); A.R.S. § 11-592(A) (stating the board of supervisors have authority to appoint a forensic pathologist to position of medical examiner); *Bd. of Sup'rs of Maricopa Cty. v. Stanford*, 70 Ariz. 277, 282, 219 P.2d 769, 772 (1950) ("[C]ounty is a political subdivision of the state existing and created to aid in the administration of the state's laws and for purposes of self government.") (citation omitted). And in conducting the death investigation, he had to decide the manner and cause of death, factors involving experience, discretion, and judgment. Although Plaintiffs argue he should be held liable for the manner in which he conducted an autopsy and came to his conclusions about the manner and cause of death, the court properly found that Dr. Horn was entitled to common-law qualified immunity because he was exercising his judgment within the scope of his duties in conducting the death investigation and issuing his report. Consequently, the court did not err in finding that Dr. Horn was entitled to common-law qualified immunity.

**CONCLUSION**

¶27  For the foregoing reasons, we affirm the superior court's order granting a new trial, as well as the ruling recognizing that Dr. Horn has, in this case, common-law qualified immunity.



Ruth A. Willingham · Clerk of the Court
FILED: ama