NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RAY O. HEAD, *Plaintiff/Appellant*,

*v.*

CITY OF MESA, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0842

FILED 02-10-2026

Appeal from the Superior Court in Maricopa County
No. CV2022-090725
The Honorable Adam D. Driggs, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Law Offices of J. Scott Halverson, P.C., Tempe
By J. Scott Halverson
*Co-Counsel for Plaintiff/Appellant*

City of Mesa Attorney's Office, Mesa
By Kim S. Alvarado
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

---

**F O S T E R**, Judge:

**¶1**          Plaintiff Ray O. Head appeals the superior court's grant of summary judgment in favor of City of Mesa ("City") and its three named police officers (collectively "Defendants"). Head argues the court erred in finding, as a matter of law, that the officers were subject to qualified immunity and that *Ryan v. Napier*, 245 Ariz. 54 (2018), precludes his claim for gross negligence. This Court affirms.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**          Late one night, Head "got pretty intoxicated," confronted a convenience store clerk and demanded the store clerk's car keys. When the clerk refused, Head revealed a gun in his waistband. The clerk informed Head he was calling the police and Head left the store. He hid in a nearby dumpster enclosure.

**¶3**          Officers located Head holding a gun to his head about 20 minutes later. Two officers repeatedly instructed Head to "drop the gun." Head refused. A negotiator communicated with Head, attempting to de-escalate the situation, but Head continued to hold the gun to his head, and at some point, his mouth. Head also fired his gun into the air during negotiations.

**¶4**          For another estimated fifteen minutes, the negotiator attempted to communicate with Head, asking his name, what happened, and offering to help. In response, Head yelled, among other things, "leave me alone," "fuck you," and "don't worry about it, asshole." Another negotiator got involved and communicated with Head, attempting to de-escalate and convince Head to surrender. During that discussion, Head moved toward the officers with the gun still in his hand. After negotiating

---

[1] This Court "view[s] the facts in the light most favorable to the nonmoving party." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373, ¶ 13 (2021).

with Head to surrender for approximately 30 minutes, officers deployed beanbag rounds, a less-lethal use of force, which struck Head's legs. Head then retreated into the dumpster enclosure with his gun.

¶5            Officers continued communicating with Head. Following another brief exchange with the second negotiator, Head removed the magazine from the gun, cleared the chamber and threw both the gun and the magazine away from himself. The negotiator then asked Head: "Would you be willing to stand up and walk toward us, facing away from us?" Head did not respond, and the negotiator repeated the request again. About a minute later, though it was difficult to hear, Head indicated he was willing to stand up and walk back. The lead negotiator relayed the information to the officers on scene.

¶6            But Head did not stand up and walk back as he agreed. Two more minutes elapsed until the negotiator again instructed Head to stand up, face his back to the officer, place his hands on the back of his head and walk toward the officer. Head did not comply with those instructions. After about seven more minutes, the lead officer deployed the arrest team and police dog to initiate the arrest.

¶7            As officers entered the enclosure and ordered Head to show his hands, the police dog bit Head on his lower right leg. Head continued to not follow instructions and the officers tased him. They tased Head a second time before they were able to detain and arrest him for attempted armed robbery, unlawful discharge of a weapon and resisting arrest. Head sustained injuries from the arrest.

¶8            Head sued Defendants for his injuries. He alleged (1) assault and battery; (2) negligence and gross negligence; and (3) negligent hiring, training, supervision and retention. The parties stipulated to dismiss Head's third claim and Defendants moved for summary judgment on the remaining claims. In response, Head "withdrew his simple negligence claim," in favor of his gross negligence claim.

¶9            After briefing and oral argument, the court granted Defendants' motion for summary judgment on both the battery and gross negligence claims. It found that qualified immunity precluded the battery claim because the "use of force inherently required judgment or discretion" and there was no evidence that the Officers' conduct rose to gross negligence, a knowing violation of well-established law, or a reckless disregard for Head's rights. The court also granted summary judgment on the gross negligence claim, relying on *Ryan* to find that, Head "cannot assert

a . . . gross negligence claim based solely on an officer's intentional use of physical force."

**¶10** Head moved for reconsideration, which the court denied. The court granted final judgment in favor of Defendants and Head appealed. This Court has jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-120.21(A)(1).

## DISCUSSION

**¶11** This Court reviews a grant of summary judgment *de novo*. *Ryan*, 245 Ariz. at 59, ¶ 15. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The nonmoving party "may not rely merely on allegations or denials of its own pleadings" and must "set forth specific facts showing a genuine issue for trial" through "affidavits or as otherwise provided in th[e] rule." Ariz. R. Civ. P. 56(e). Likewise, this Court reviews "the existence and scope of qualified immunity *de novo*." *Spooner v. City of Phoenix*, 246 Ariz. 119, 123, ¶ 7 (App. 2018).

## I. Qualified immunity applies.

**¶12** Head argues that qualified immunity does not preclude his battery claim because officers knew or should have known that they were acting in violation of well-established law or in reckless disregard of Head's rights. Head presents two arguments. First, he asserts that the officers had no reason to cease negotiations when he discarded the gun and continued communicating with the negotiator. And second, Head argues that the officers should have warned him before deploying the police dog.

**¶13** A court determines as a matter of law whether a defendant is entitled to qualified immunity. *See Chamberlain v. Mathis*, 151 Ariz. 551, 554 (1986). Regardless, "[o]ur system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to [the] law." *Id.* at 555 (citation omitted). But law enforcement officers receive limited protection through qualified immunity when performing acts that require discretion or judgment. *Id.*; *see also Spooner*, 246 Ariz. at 124, ¶ 11 (in law enforcement, criminal investigations include "personal deliberation and individual professional judgment that necessarily reflect the facts of a given situation").

**¶14** Qualified immunity does not protect an official's liability though when the government official "knew or should have known that he was acting in violation of established law or acted in reckless disregard of

whether his activities would deprive another person of their rights." *Chamberlain*, 151 Ariz. at 558; *see also Grimm v. Ariz. Bd. of Pardons & Paroles*, 115 Ariz. 260, 267–68 (1977) (immunity ceases "only for the grossly negligent or reckless" conduct); *Garibay v. Johnson in and for Cnty. of Pima*, 259 Ariz. 248, 246, ¶ 38 (2025) ("A party is grossly negligent if they know, or have reason to know, facts that would lead a reasonable person to recognize their conduct created an unreasonable risk of bodily harm and involved a high probability of substantial harm"). Consequently, the doctrine of qualified immunity "gives ample room for mistaken judgments" but is overcome when conduct is "plainly incompetent or . . . knowingly [a] violat[ion of] the law." *Spooner*, 246 Ariz. at 124, ¶ 9 (quoting *State v. Donaldson*, 185 Ariz. 47, 50 (App. 1996) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991))); *Jennings v. Agne*, 254 Ariz. 174, 178, ¶ 15 (App. 2022) ("If immunity applies, an officer is shielded from liability unless the conduct rises to gross negligence or recklessness.").

¶15 Here, the court reasoned that Head "provided no evidence that Defendant[s] knew they were violating established law or recklessly disregarded [Head]'s rights." Head presented no evidence to demonstrate that the decision to end negotiations recklessly disregarded his rights. *See Chamberlain*, 151 Ariz. at 558. *See Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 119, ¶ 26 (App. 2008) (when the moving party meets its initial burden, then the nonmoving party must address overlooked evidence or explain why the moving party's motion lacks merit). Head did cite the City's departmental policy recommending a warning before deployment of a police dog. But he failed to show how the lack of a warning resulted in a reckless disregard of his rights or was unlawful. *See* A.R.S. § 11-1025(D). And he did not adequately address the portion of the policy that permits officers to deploy a police dog without warning for tactical reasons.

¶16 Under the City's policy, "a verbal warning need not be given when doing so would be tactically undesirable or would result in increased risk to the physical safety of the handler, other officers, or the public." Head's expert explained there are "a plethora of situations" where it is reasonable for an officer not to warn about deploying a police dog, including revealing one's position or enabling "the suspect time to obtain a weapon." While the expert identified a hypothetical alternative the officers could have followed, an officer's choice not to apply the alternative does not amount to a violation of established law or reckless disregard. *See State v. Vasquez*, 167 Ariz. 352, 356 (1991) (in a pat-down, an officer's tactical choice "between apparent alternative courses of action cannot be overturned . . . as long as the course of action taken in itself is reasonable") (quoting *Bailey v. United States*, 279 A.2d 508, 510 (D.C. App. 1971). Head's

argument that a jury "could conclude that there was nothing whatsoever 'tactically undesirable'" in providing such a warning, is inapplicable in the determination of whether Head's evidence established that the officers knowingly violated the law or recklessly disregarded his rights.

**¶17** Head also claims that the officers' actions were grossly negligent or reckless because he had already surrendered to the officers. But Head admitted in a deposition that during the incident he was in a "blackout state." His reliance on his own subjective belief cannot create an issue of fact. *See Dobson v. Grand Int'l Brotherhood of Locomotive Eng'rs*, 101 Ariz. 501, 505 (1966) (affirming summary judgment when the record contained no evidence supporting the plaintiff's statements and does not raise a genuine issue of material fact). To overcome Defendant's qualified immunity defense, Head needed to establish that the officers' actions amounted to a violation of established law or a reckless disregard of his rights by ceasing negotiations and not warning him about the police dog's deployment. Head failed to do so, entitling Defendants to qualified immunity.

**¶18** Accordingly, qualified immunity precluded Head's claim and summary judgment was proper. *See Orme School v. Reeves*, 166 Ariz. 301, 310 (1990).

## II. Head's gross negligence claim fails.

**¶19** The superior court found that Head could not "assert a negligence or gross negligence claim based solely on an officer's intentional use of physical force." The court reasoned that *Ryan's* analysis of a negligence claim against an intentional use of force required the same elements for gross negligence. Head disagrees, arguing that under *Ryan* "plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory." 245 Ariz. at 62, ¶ 31. He claims that the officers were grossly negligent in their attempt to de-escalate and defuse the situation. Although this Court agrees that a gross negligence claim based on independent facts may be actionable under *Ryan*, Head failed to point to a separate factual basis to support his claim.

**¶20** *Ryan* involved a negligence claim for the deployment of a police dog. *Id.* at 57, ¶ 1. In that case, the Arizona Supreme Court held that because negligence and intent are mutually exclusive grounds for liability, a plaintiff cannot assert a negligence claim grounded on an intentional act. *Id.* at 57, 60, ¶¶ 1, 20. In other words, "if a defendant acts with the intent to

cause a harmful or offensive touching (battery), that same act cannot constitute negligence." *Id.* at 60, ¶ 20. The Supreme Court reasoned that an officer's internal determination to release a police dog and the officer's "decision to do so was part and parcel of his intent to inflict harmful and offensive contact." *Id.* at 60–61, ¶ 22. Thus, an officer is not liable for negligence when he intentionally deployed a police dog. *Id.* at 62, ¶ 32. However, *Ryan* made clear that "plaintiffs may plead a negligence claim for conduct that is independent of the intentional use of force or plead negligence and battery as alternate theories if the evidence supports each theory." *Id.* at 62 ¶ 31.

**¶21**        Head needed to establish a genuine issue of material fact as to whether Defendants committed gross negligence and needed to provide a separate factual basis than that relied on for his battery claim. Though Head claims the police officers were grossly negligent in their failure to de-escalate and defuse the situation, he fails to point to specific facts to support his claim. Instead, Head cites to "previous allegations in this Complaint." Those allegations refer to use of the police dog, use of lethal and less-lethal weapons and failure to de-escalate—all the same facts that support his battery claim.

**¶22**        At oral argument, Head attempted to support his position by citing the Arizona Supreme Court's recent decision in *Roebuck v. Mayo Clinic*, 575 P.3d 375 (2025). There, the Supreme Court defined gross negligence in a medical malpractice context under A.R.S. § 12-516(A). *See Roebuck*, 575 P.3d at 380, 382–83, ¶¶ 8, 17–18. But *Roebuck* did not overrule *Ryan*, and Head's undeveloped argument that *Roebuck's* holding applies to this case is unconvincing.

## III.    Attorneys' fees and costs.

**¶23**        Neither party sought attorneys' fees or costs on appeal. *See* Ariz. R. Civ. App. P. 21 (A)(1) (a claim for attorneys' fees must be asserted in the opening or answering brief on appeal). However, as the prevailing party, Defendants are entitled to their costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. A.R.S. § 12-341; Ariz. R. Civ. App. P. 21(b).

## CONCLUSION

¶24   This Court affirms.

