363 P.2d 588

**Robert J. COLFER, Jr., Appellant,**

v.

**Robert BALLANTYNE et al., Appellees.**

No. 6758.

Supreme Court of Arizona.

In Division.

July 6, 1961.

Kenneth S. Scoville and Robert J. Spillman, Phoenix, for appellant.

Moore & Romley, Jarril F. Kaplan, Robert H. Green, Phoenix, for appellees.

HENRY S. STEVENS, Superior Court Judge.

This personal injury action was tried to a jury. The jury returned a verdict for the plaintiff in the sum of $7,000. The defend-

ant moved for a new trial, which was granted. Rule 59(m) of the Rules of Civil Procedure, 16 A.R.S. is as follows:

"No order granting a new trial shall be made and entered unless the order specifies with particularity the ground or grounds on which the new trial is granted."

The trial court's order on the motion is as follows:

"Having been under advisement, the court now rules: It is ordered that the defendants' motion for new trial be, and the same is hereby granted on the grounds of irregularity in the proceedings, misconduct of counsel for the plaintiff and error in the charge to the jury."

We find that the assignments of error and the matters presented for consideration by this court fall within the scope of the order. The basic question presented is whether or not the trial court abused its discretion in granting the new trial.

■ The primary issue is whether or not the conduct of plaintiff's counsel was such as to be prejudicial to the defendants and thereby deprive the defendants from securing a fair trial. The atmosphere or climate of the trial is peculiarly within the knowledge and experience of the trial court. Nevertheless, there must be a basis for the exercise of discretion.

The plaintiff took the deposition of the defendant Ballantyne, he being the principal actor upon whose acts the plaintiff bases his charge of negligence and his right to recover. Mr. Ballantyne at the time of his deposition had moved from Phoenix to California and he came to Phoenix for his deposition. The plaintiff wisely served him with a subpoena and tendered witness fees.

The case was called for trial at the beginning of the morning session of the court. Prior to the voir dire of the jury, and out of the presence of the jury, defendants' counsel advised the court of Mr. Ballantyne's absence and orally moved for a continuance. This was strongly resisted by the plaintiff who urged that the motion did not lie in oral form nor for the reasons stated and, further, that there were good reasons to believe that Mr. Ballantyne's absence was wilful and contemptuous. The plaintiff further urged that the plaintiff himself had come from Michigan for the trial. The transcript reflects that these proceedings were far from amicable.

The trial court recessed until the afternoon to permit the filing of a written motion and to enable the defendants' attorney to seek further information as to the reason for Mr. Ballantyne's absence. Later, the request for a continuance was abandoned. That afternoon the impaneling of the jury commenced. Plaintiff's counsel asked leave and was granted permission to ask questions on voir dire. Some are urged as

prejudicial to the defendants and as part of the just cause for the granting of the new trial.

Plaintiff's counsel asked: "Now, have any of you ever been a litigant in such a suit?" Juror Hunter, who was later excused by the court by reason of a temporary business hardship, replied: "I wasn't sued, but my insurance company paid the doctors' bills."

"Plaintiff's attorney: Someone slipped on your premises?

"Juror: In my home.

"Plaintiff's attorney: I take it your insurance took care of it and left no dissatisfaction with you in any way?

"Juror: No, none whatever."

Plaintiff's counsel asked the following:

"Now, the court asked you if you knew any of the counsel here that is present today. * * * Do any of you know the senior members of the Moore & Romley firm, Mr. James R. Moore, or have any of you had any business, been represented, any of you in any capacity?

"Juror Glenn: He has represented the company I work for.

"Plaintiff's attorney: Might I inquire what company?

"Juror: Fireman's Fund Insurance Company.

"Plaintiff's attorney: And do you know whether or not he still represents that company that you work for—you work for them now, Ma'am?

"Juror: I do.

"Plaintiff's attorney: Then, I take it, also, you know the other senior partner, Elias Romley?

"Juror: I don't know him personally.

"Plaintiff's attorney: The fact he represents that company, I take it, wouldn't in any way influence you in your deliberations in this case?

"Juror: No, it wouldn't."

Thereafter, in the voir dire, plaintiff's counsel proceeded as follows:

"* * * Our plaintiff here is and has been an insurance adjuster. Now, do any of you have any prejudice against insurance adjusters per se? Do any of you have inherent prejudices against insurance adjusters?

"I take it by your silence that you don't."

Following the conclusion of plaintiff's voir dire examination of the jury, the defendants moved for a mistrial by reason of the above matters, which motion was denied.

Upon the opening of the presentation of the evidence the following occurred in the presence of the jury:

"Plaintiff's attorney: At this time, plaintiff will call Mr. Robert M. Ballantyne as an adverse party and also as an adverse party for purposes of cross examination pursuant to the statute.

"Defendants' attorney: As I informed the court and Mr. Scoville earlier today, and Mr. Scoville well knows, Mr. Ballantyne is on his way to Phoenix from California, where he now lives and is not present at this time. We expect him here later this afternoon.

"Plaintiff's attorney: The record to the court shows a subpoena was served upon him two weeks ago to be here. Mr. Kaplan quoted as of this morning; he said he was not here this morning, but, if Your Honor pleases, *we have delayed that trial* until this point, and I do feel that the proper order should issue for the failure to comply with the process and show the dignity of the ·court to call regularly called for trials, which Mr. Kaplan advised the court this morning his client was familiar with and had been familiar with for some time with the fact that this case was coming to trial today. (Emphasis supplied.)

"The Court: The court will take ·care of that matter in proper time. Do you have another witness to call?

"Plaintiff's attorney: If Your Honor pleases, at this time I move the defendant be held in contempt for his failure to comply with the order of this court and the processes of this court.

"The Court: The Court heard you, Mr. Scoville. If you have another witness to call at this time, we will proceed with the case.

"Plaintiff's attorney: This was the order of procedure, if Your Honor pleases, that we desire to proceed and——

"The Court: If you are unable to proceed, Mr. Scoville, without the calling of this witness, and if you will so inform the court that you are unable to proceed without this witness being called at this time, the court will consider your request at this time.

"Plaintiff's attorney: If Your Honor pleases, as far as being able to proceed, it certainly violates the order of proof that I had contemplated following here; and I don't feel that——."

The record reflects proceedings without the presence of the jury. The attorney for the plaintiff continued to urge the issuance of a contempt citation. The attorney for the defendants again moved for a mistrial. This conference terminated with the following statement by the plaintiff's attorney: "If the court is going to proceed, I will call a witness." The motion for mistrial

was denied and the trial proceeded in the presence of the jury.

During the course of the trial there was considerable testimony as to the plaintiff's employment from time to time as an insurance adjuster. No objection was made to this evidence. In the closing phases of the cross-examination of the plaintiff, defendants' counsel inquired into the plaintiff's experience as an insurance adjuster, asking, "In the course of your investigation of personal injury claims, it was your job and duty to know a false claim from a valid one, wasn't it?" to which the plaintiff replied, "Try to be, yes." Defendants' counsel closed his cross-examination with the following question: "And you are also familiar with the term commonly called in the industry as a build-up, is that right, Sir?" to which the plaintiff answered, "That is right."

In his argument to the jury, plaintiff's counsel took exception to this portion of the cross-examination, interpreting it as an accusation which might appear to embrace plaintiff's counsel; he further stated, "It would embrace Jim Markel, the firm in Detroit Michigan who is my means of having Mr. Colfer referred, came to me, who happens to be chief counsel of the Detroit-Edison Company, I think the largest utility company in the United States." Further on in his argument plaintiff's counsel stated: "I might go back to Michigan this summer, this same lawyer that I mentioned a few moments ago, concerning the death of some of those individuals who were killed over the Grand Canyon in that double crash between those two air liners up there, I think there was some seventy killed, for the purpose of testifying—." This was followed by an objection by defense counsel which objection was sustained.

During the course of his argument, plaintiff's counsel in three different places referred to a $95 doctor bill which had been offered in evidence and to which an objection had been sustained. In the argument, plaintiff's attorney referred to the fact that defense counsel had a transcript of the plaintiff's testimony, and stated: "He has been able to purchase, apparently, a good deal more of this testimony than he wanted, bought the entire testimony, Mr. Colfer's entire testimony." And referring to the instructions, the attorney for the plaintiff stated: "And each of us lawyers, we prepare instructions on these things and the court gives you the instructions on the various theories of the lawsuit. Now, apparently he is hanging his hat on contributory negligence; and that is something you as jurors sit in these cases, you will hear it and hear it and hear it."

In discussing the matter of the measure of damages, plaintiff's counsel stated: .

"As to the amount of damages, I sometimes think that we lose our sense of values. I think that Marlene Die-

trich would walk across the stage in Las Vegas in a fishnet dress and get $5,000 on Tuesdays and Thursdays for walking across the stage in a fishnet dress, a 56 year old grandmother; we have got 32 race horses in the country in which the purse exceeds $100,000."

■■ In the opinion of the court, it was quite appropriate for plaintiff's counsel to voir dire the jury in relation to the occupation of his client. The fact that motions for mistrial as to specific matters were denied does not prevent the same matters from being urged as a part of the over-all cumulative effect of alleged improper conduct.

■ The reference to Marlene Dietrich and to race horses was not relevant to the issue as to plaintiff's damages and did not call upon the jurors to exercise judgment and experience in connection with the ordinary everyday affairs of life in evaluating the testimony. Reference to counsel's association with outstanding lawyers in big industry and big tort cases has no place in the argument. Reference to the ability of defendants' counsel to buy more portions of the transcript of testimony than he needed certainly emphasized those matters which were touched upon on voir dire in the

question and answer period. The answers of the jurors in relation to matters of insurance are not initially to be attributed to plaintiff's counsel. The subsequent questions, however, were so framed as to emphasize the question of insurance which could and should have been avoided.

Defendants' counsel objected to certain instructions which had been refused and urged as error the trial court's apparently inadvertent omission of a modification of an instruction which modification the trial court had agreed to insert. Since other matters in relation to instructions will be presented to the same or another trial judge upon the retrial of this cause, the court does not deem it necessary to comment with reference to all issues raised on the question of instructions.

■■ This court is unable to say that the trial court abused its discretion. We will not reverse a trial court in matters of discretion unless there is a clear abuse thereof. Zugsmith v. Mullins, 86 Ariz. 236, 344 P.2d 739.

The order granting the motion for new trial is affirmed.

UDALL and LOCKWOOD, JJ., concur.