NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PATRICK JAMES MCMULLAN, et al., *Plaintiffs/Appellants*,

*v.*

CATHOLIC HEALTHCARE WEST, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0328
FILED 6-12-2018

Appeal from the Superior Court in Maricopa County
No. CV2011-008923
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Cronus Law, PLLC, Phoenix
By Jeff Bouma

Elardo Bragg & Rossi, PC, Phoenix
By John A. Elardo, Venessa J. Bragg
*Co-Counsel for Plaintiffs/Appellants*

Kent & Wittekind, PC, Phoenix
By Richard A. Kent, Cynthia Y. Patane

Campbell Yost Clare & Norell, PC, Phoenix
By Mary G. Isban

Melinda K. Cekander, PLLC, Heron, MT
By Melinda K. Cekander
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Maurice Portley[1] joined.

---

**S W A N N**, Judge:

¶1    Leah McMullan, et al., ("McMullan") appeals the superior court's summary judgment on her negligent credentialing claim, the denial of her motion for new trial, and the denial of her motion for time to conduct additional discovery.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2    Dr. John Brown ("Brown") is a podiatrist who had privileges to perform surgical operations at both Mercy Gilbert Hospital ("Mercy Gilbert") and Chandler Regional Medical Center ("Chandler Regional") (collectively, "Dignity").[2]  On April 16, 2009, Brown was involved in a single-vehicle collision while driving under the influence of alcohol.  An officer responded to the incident and paramedics transported Brown to Chandler Regional for treatment, where he also received a medical blood draw.

---

[1]    The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]    Dignity is the sole jural entity and was formerly known as "Catholic Healthcare West."  Both Mercy Gilbert and Chandler Regional do business as Dignity.

2

**¶3**         An emergency room physician, Dr. Paul McHale ("McHale"), treated Brown and created a medical report. The report described Brown as a "patient" under the name "Brown, Jon D." Another report also stated that Brown "obviously consumed alcohol on a regular basis due to the fact that he could speak and converse with a blood alcohol level of 0.380 percent." Hospital staff inventoried Brown's possessions, listing cash, bank cards, vehicle registration, and his phone — none of which identified him as a doctor.

**¶4**         On April 24, 2009, Brown performed surgery on McMullan's foot at Mercy Gilbert. On the day of surgery, McMullan joked with Brown that they should "run down the street to Blue 32 and have cocktails" before the operation. According to McMullan's deposition testimony, Brown responded that he "already had his before he arrived." McMullan further testified that had she felt Brown was serious, she would not have allowed him to perform the surgery. There is no evidence that, at the time of the surgery, the staff at Mercy Gilbert knew or should have recognized that Brown was intoxicated or impaired. Apart from Brown's response to McMullan's joke, there is no evidence that he was actually impaired at the time of the surgery.

**¶5**         On April 27, 2009, the State of Arizona Board of Podiatry Examiners ("Board") held a teleconference regarding an anonymous call about Brown. According to the meeting minutes, the call was made on April 19, 2009, three days after Brown's DUI-related accident. The complainant alleged that Brown had been treated at Chandler Regional following a DUI accident and that he had open containers of alcohol in his vehicle. The Board's executive director reviewed the emergency room report by McHale from the night of the accident; thereafter, the Board voted to suspend Brown's medical license. The Board's executive director recommended a voluntary disciplinary agreement that included a condition that a substance abuse evaluation be conducted on Brown by a Board-approved specialist. Brown's attorney recommended Dr. Michael Sucher ("Sucher"), who had previously conducted substance-abuse evaluations on Brown. During the evaluation at an alcohol-treatment facility, Sucher recorded Brown's statements, one of which was that he "knew ER Doc [McHale] cause he take [sic] call there."

**¶6**         While the true identity of the anonymous caller was never disclosed, additional records concerning an investigation by the Board revealed that Brown had additional complaints filed against him in 2008. The Board subpoenaed "AW" and "SW." Meeting minutes from May 14, 2008, indicate that AW was aware that Brown filled prescriptions for

himself in his patients' names and that AW was concerned because "Dr. Brown was impaired while working, he smelled of alcohol, on several occasions employees and patient [sic] had complained of this."

¶7        The operation that Brown performed on McMullan left her with injuries to her foot.  On April 22, 2011, McMullan filed a complaint against, as relevant here, Dignity, Brown, Brown's practice AACI Foot, Leg, and Ankle Care ("AACI"), and Brown's AACI colleagues Dr. Peters ("Peters") and Dr. Maben ("Maben").  In addition to a direct claim for medical negligence associated with the injuries to her foot, McMullan brought a negligence claim alleging that Maben and Peters were aware of Brown's alcoholism and their failure to warn Dignity's administration was the direct and proximate cause of McMullan's injuries.  The complaint also sought damages from Dignity on a *respondeat superior* theory, and asserted that Dignity was independently negligent in credentialing Brown.

¶8        In March 2013, Dignity moved for summary judgment on McMullan's negligence claim.  In response, McMullan filed a request under Ariz. R. Civ. P. ("Rule") 56(f)[3], seeking to conduct additional discovery into Brown's medical records.  Dignity provided Brown's medical records in May 2013.

¶9        In August 2014, Dignity moved for summary judgment on McMullan's credentialing claim against Chandler Regional.  The credentialing claim alleged that Brown was treated at Chandler Regional after his DUI accident and staff there had at least constructive notice of his alcoholism.  According to McMullan, with their knowledge, the staff was required to alert Dignity's administration, which then would have revoked Brown's privileges to perform surgery at Mercy Gilbert, where McMullan's surgery took place.  According to Dignity, its medical personnel did not have actual or constructive knowledge that the patient treated at Chandler Regional was one of its credentialed physicians.  And McMullan's expert testified that because there was no evidence that medical personnel at Mercy Gilbert were "informed or advised" that Brown was a patient at Chandler Regional with a blood alcohol content of 0.380, Dignity did not violate any standard of care.

¶10        In April 2015, the court held oral argument to address the summary judgment motions regarding negligence and negligent credentialing.  Dignity's attorney asked to postpone the argument on the

---

[3]        We cite the version of the rules as they existed at the time of the events, as they were revised effective January 1, 2017.

negligent credentialing claim, and the court agreed. Regarding the negligence claim, the court granted summary judgment to Dignity on the negligence claim finding:

> [U]pon the agreement and stipulation of the parties, that there is no evidence of Dr. Brown's impairment or intoxication at the time of his surgery on Mrs. Leah McMullan such that the Mercy Gilbert Hospital staff or operating room personnel either knew or should have known or suspected that Dr. Brown was intoxicated or impaired.

¶11 The next month, the court held oral argument on Chandler Regional's summary judgment motion regarding negligent credentialing. Before the hearing, Dignity submitted as an exhibit four out of thirty-nine pages of McHale's Director Services Agreement ("employment agreement") relating to his position at Chandler Regional. On the day of the hearing, Dignity submitted a revised supplemental exhibit that included McHale's entire employment agreement. At the oral argument, the court allowed Dignity to refile the employment agreement as a part of the record.

¶12 The court discussed the employment agreement, finding that McHale "can wear two hats" because "[h]e can be an emergency room doctor and he can also be the medical director." The court also stated that while McMullan could not depose McHale concerning medical care he provided because of HIPPA concerns, she could depose him on the matter of whether or not he knew Brown. McMullan asked the court whether it would be "willing to modify" an order to allow deposition of Brown's doctors and whether the court "[w]ould [ ] like me to submit something on that." The court responded, stating, "I'll leave that to you."

¶13 On May 19, 2015, McMullan's expert, Richard Schmidt, filed an amended affidavit based upon the "new evidence," of McHale's employment agreement. According to Schmidt's affidavit, McHale is a "member of the administration of Dignity and its two hospitals such that his knowledge is directly attributed to Dignity itself." Further, Schmidt opined that "[b]ecause Dr. McHale was the Medical Director of the emergency room and had direct knowledge of Dr. Brown's condition and behavior as of April 16, 2009," no one else in the emergency room department was required to take further action regarding Brown. Instead, Schmidt opined, McHale was required to perform his duties under the agreement by informing Dignity's administration of Brown's condition.

¶14 The court entered final judgment under Rule 54(b) on September 15, 2015, granting Dignity's motion for summary judgment on the negligent credentialing claim. The ruling addressed whether "there is any evidence that Dignity knew or reasonably should have known before the surgery" that Brown was unfit to practice given the events that took place at Chandler Regional a few days earlier. The court ruled that for Dignity to have been negligent in allowing Brown to perform, "doctors, nurses, or staff at Chandler Regional would have to know or have some reason to know" that their patient was a physician with privileges to practice at Dignity hospitals. Ultimately, the court found that McMullan failed to present any direct or circumstantial evidence that would raise a jury question as to that knowledge.

¶15 McMullan filed an unsuccessful Rule 59 motion for new trial, which reargued issues presented at oral argument and discussed by the court in its ruling. She then filed this appeal.

## DISCUSSION

¶16 McMullan argues on appeal that the superior court (1) erred by granting Dignity's motion for summary judgment; (2) erred by denying her motion for new trial; and (3) improperly denied her oral motion to conduct further discovery. We conclude that the court's grant of summary judgment in favor of Dignity was proper, that the court correctly determined there was no basis for a new trial, and that McMullan did not make a timely motion to conduct further discovery. We therefore affirm.

I. THE COURT DID NOT ERR BY FINDING IN FAVOR OF DIGNITY ON THE MOTION FOR SUMMARY JUDGMENT.

¶17 McMullan contends that the court abused its discretion by granting Dignity's motion for summary judgment. A court's grant of summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 56(a). We review the court's grant of summary judgment de novo, viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 7 (App. 2009).

    A. The Superior Court Did Not Usurp the Role of the Jury by Deciding There Were No Issues of Material Fact.

¶18 McMullan contends that the court assumed the role of the jury by deciding there were no issues of material fact. We disagree — the court

properly performed its role under Rule 56 to determine whether any genuine, material issue of fact warranted submission of the case to a jury. When a defendant moves for summary judgment, the court evaluates the record and determines whether the plaintiff has produced evidence from which a reasonable jury could find for her on each element of her claims. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). The evidence is insufficient to send the claims to a jury, and warrants a grant of summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.*

**¶19** Our review of the record indicates that McMullan did not present any evidence from which a jury could find that Dignity was on notice of Brown's substance-abuse problems before he performed her surgery.

> B. The Superior Court Applied the Correct Legal Standard to the Case.

**¶20** McMullan contends that the correct legal standard in a negligent credentialing case is constructive knowledge when an employee acquires information regarding another employee's competency. In a negligent credentialing claim, a hospital and its governing body will not be held responsible for negligence based upon the omission of an act, "unless it had reason to know that it should have acted within its duty to the patient to see that only professionally competent persons were on its staff." *Tucson Med. Ctr., Inc. v. Misevch*, 113 Ariz. 34, 36 (1976); *see also Ziegler v. Superior Court (DeVito)*, 134 Ariz. 390, 394 (App. 1982). An essential factor in determining whether the hospital acted with reasonable care or was liable of negligence is actual or constructive knowledge. *Humana Hosp. Desert Valley v. Superior Court (Edison)*, 154 Ariz. 396, 400 (App. 1987). "[A] corporation is bound by the knowledge acquired by, or notice given to, its agents or officers which is within the scope of their authority and which is in reference to a matter to which their authority extends." *Rice v. Brakel*, 233 Ariz. 140, 145, ¶ 19 (App. 2013) (citation omitted). An independent contractor's knowledge may be imputed to a principal when the contractor holds an agency position. *Fridena v. Evans*, 127 Ariz. 516, 519 (1980). And the plaintiff must introduce evidence of some reasonable connection between the defendant's act or omission and the plaintiff's damages. *Purcell v. Zimbelman*, 18 Ariz. App. 75, 82–83 (1972).

¶21     The superior court's ruling concluded that the "determinative issue in the case against Catholic Healthcare (Dignity) is whether there is any evidence that Dignity knew or reasonably should have known" that Brown was a doctor credentialed with privileges at Dignity hospitals. We agree. Though McMullan may be correct that McHale was aware of his patient's credentialed status when he treated him, the theory is purely speculative without evidence to support it. McMullan did not depose McHale, and she presented no other evidence from which a jury could infer awareness by Dignity or its agents.

¶22     McMullan also argues that the court did not consider McHale's employment agreement and had it done so, the legal standard the court applied to the case would have been constructive knowledge and not actual knowledge. Nothing about the employment agreement constitutes evidence of knowledge. The agreement is evidence of McHale's agency, but that fact was not in dispute. And the court expressly, and correctly, applied a constructive-knowledge standard. For McMullan to succeed on the negligent credentialing claim, she needed to present material evidence that McHale knew Brown was a doctor credentialed to practice at Dignity hospitals at the time of the treatment, and that Brown's lack of competency was the proximate cause of the harm. Based on the record, McMullan failed to present any such evidence.[4]

C.     The Court Considered the Relevant Evidence on the Record in Ruling on the Motion for Summary Judgment.

¶23     McMullan asserts that there is evidence in the record from which a jury could reasonably conclude that McHale knew Brown was a physician credentialed to work at Dignity hospitals. Brown told Sucher he "knew ER doc [McHale] cause he take [sic] call there." Assuming "take call" means "on call," McMullan contends that it should logically follow

---

[4]     We address McMullan's contention that it was not made part of the record. The record reveals the court made the employment agreement a part of the record by allowing Dignity to refile it. Because the court treated McHale as Dignity's employee for the purpose of negligent credentialing, the new affidavit submitted by McMullan's expert after the oral argument does not alter the analysis. McMullan also claims that Dignity's "late disclosure and non-disclosure" of Brown's medical records "containing McHale's opinions" and other redacted statements prevented the court from considering them and applying the correct standard of review. Those assertions are contrary to the record. McMullan was in possession of the original emergency room records by at least October 29, 2014.

that because Brown was "on call" at Dignity while McHale was the medical director, McHale must personally know Brown. This theory would have been the appropriate subject of discovery, and the resulting evidence might have been sufficient to withstand summary judgment. But however tempting it might be to speculate about the facts behind those words, the superior court correctly declined to speculate on what evidence might exist on summary judgment, and confined its review to the evidence presented. Likewise, we cannot speculate on appeal what evidence might have been revealed in discovery.

¶24 McMullan further argues that Dignity's late disclosure of McHale's employment agreement violated Rule 26.1 and prevented her from deposing McHale. We disagree. The duty to disclose under Rule 26.1 is triggered by a determination that a person "may" have relevant knowledge or that a document "may" have relevant content. Rule 26.1(a)(4), (9). The duty to disclose is a continuing one and each party "must serve additional or amended disclosures" in the event that new or different information is discovered or revealed. Rule 26.1(d)(2). In 2013, McMullan filed a Rule 56(f) motion, noting that McHale was the "Emergency Department physician on duty" who discussed Brown's issues with the Board. In addition, a month before oral argument on Dignity's credentialing claim, McMullan filed a response to the original motion stating, "McHale, who Brown admits he knew." Given the information McMullan had about McHale, the employment agreement was not new information and was not necessary to trigger the need (or ability) to depose McHale. The late disclosure did not prejudice McMullan.

¶25 Last, McMullan argues that the court ignored Brown's history as an alleged long-term prescription-drug abuser and alcoholic, and his "history of arrests and violent behavior when drunk." The question, however, is not whether the court should have considered evidence of Brown's substance abuse, but whether Dignity knew of the information. Even assuming that McMullan accurately describes the extent of Brown's substance abuse, the missing link is evidence of awareness on the part of Dignity. In so holding, we do not find that Dignity was ignorant of these facts. We simply cannot conclude on this record that McMullan met her burden to produce evidence of such facts.

II.      THE COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE MOTION FOR NEW TRIAL.

¶26 McMullan claims that her motion for new trial was improperly denied based on newly discovered evidence. The grant of a

motion for new trial based on newly discovered evidence is appropriate only if "(1) the newly discovered evidence could not have been discovered before the granting of judgment despite the exercise of due diligence, (2) the evidence would probably change the result of the litigation, and (3) the newly discovered evidence was in existence at the time of judgment." *Boatman v. Samaritan Health Servs., Inc.*, 168 Ariz. 207, 212 (App. 2007) (citation omitted). In reviewing the superior court's ruling on a motion for new trial, we view the facts the light most favorable to upholding the ruling and will not overturn the ruling absent a clear abuse of discretion. *State Farm Fire & Cas. Co. v. Brown*, 183 Ariz. 518, 521 (App. 1995); *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007).

**¶27** The purported "newly discovered evidence" was McHale's employment agreement with Dignity. As early as 2013, McMullan was fully aware that McHale was Brown's treating physician the night he was treated at Chandler Regional and that McHale had discussed Brown's condition with the Board. And as we have discussed, nothing in the employment agreement could have changed the outcome of the case.

**¶28** McMullan also contends that a new trial should be granted based on *Colfer v. Ballantyne*, 89 Ariz. 408 (1961). In *Colfer*, our supreme court held that the grant of a new trial may be predicated upon prejudicial attorney misconduct and it is also a matter over which the trial court may exercise broad discretion. *Id.* at 409. But the record does not reveal that Dignity's late disclosure of a collateral document affected the outcome of the litigation, and the late disclosure therefore does not rise to the level of misconduct warranting a new trial. We hold that the superior court did not abuse its discretion by denying the motion for new trial.

III. THE REQUEST FOR ADDITIONAL DISCOVERY WAS IMPROPER.

**¶29** McMullan argues that the court improperly denied her oral motion to conduct additional discovery. A Rule 56(f) motion was the proper method for requesting additional time to conduct discovery in response to a motion for summary judgment. An oral motion for additional time to conduct discovery does not meet the requirements of Rule 56(f) relief. *St. George v. Plimpton*, 241 Ariz. 163, 168, ¶ 30 (App. 2016). A valid motion requires the moving party to submit a sworn statement specifically describing the reasons justifying a delay, such as:

> (1) the particular evidence beyond the party's control; (2) the location of the evidence; (3) what the party believes the evidence will reveal; (4) the methods to be used to obtain it;

and (5) an estimate of the amount of time the additional discovery will require.

*Id.* at ¶ 31 (citation omitted). We review the court's ruling on a Rule 56(f) motion for abuse of discretion. *Simon v. Safeway, Inc.*, 217 Ariz. 330, 332, ¶ 4 (App. 2007).

**¶30** McMullan contends the request was made at oral argument on May 7, 2015. As the record reveals, the extent of the discussion regarding discovery was McMullan's request as to whether the court would be "willing to modify" an order to allow deposition of Brown's doctors and whether the court "[w]ould [ ] like me to submit something on that." The court responded, stating "I'll leave that to you." Given the statements made by McMullan and the court, there was neither a clear request for a Rule 56(f) motion nor a denial by the court.

**¶31** Even if the oral motion was proper, the requirements for a motion to conduct additional discovery were not met. McMullan did not submit a sworn statement in compliance with Rule 56(f). Moreover, McMullan did not specify the particular evidence beyond her control, the location of such evidence, the methods that would be used to obtain it, and the amount of time the additional discovery would require. Given the circumstances, we find that the superior court did not abuse its discretion by not specifically granting McMullan's oral request to conduct additional discovery.

## CONCLUSION

**¶32** For the foregoing reasons, we affirm the superior court's entry of summary judgment in favor of Dignity, denial of McMullan's motion for new trial, and denial of the oral motion to conduct additional discovery.



AMY M. WOOD • Clerk of the Court
FILED: AA